484 A.2d 652

**Irma A. VIRGIL, et vir.**

**v.**

**"KASH N' KARRY" SERVICE CORPORATION, et al.**

**No. 234, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 7, 1984.

Certiorari Denied April 22, 1985.

**26**

John Wheeler Glenn, Baltimore (Leroy W. Preston and O'Connor, Preston, Glenn & Smith, P.A., Baltimore, on the brief), for appellants.

Cornelius F. Sybert, Jr., Ellicott City (Sybert & Adams, P.A., Ellicott City, on the brief), for appellee, Aladdin Industries, Inc.

B. Ford Davis, Baltimore (Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, on the brief), for appellee, Kash & Karry Service Corp.

Argued before ADKINS, BLOOM and GETTY, JJ.

BLOOM, Judge.

In this products liability case, the appellants, Irma Virgil and her husband, Donald Virgil, plaintiffs below, appeal from a judgment of the Circuit Court for Howard County,

entered upon a directed verdict in favor of the defendants-appellees, "Kash N' Karry" Service Corporation (Kash N' Karry) and Aladdin Industries, Incorporated (Aladdin).

The suit was for personal injuries sustained by Mrs. Virgil when a thermos bottle manufactured by Aladdin and sold by Kash N' Karry imploded while Mrs. Virgil was pouring milk into it. The declaration asserted claims by Mrs. Virgil, alleging (count 1) various negligent acts and omissions including negligent failure to warn of the dangerous propensities of the product; (count 2) breach of express warranty; (counts 3 and 5) breach of implied warranty of merchantability; (counts 4 and 6) strict liability in tort. A seventh count, incorporating the allegations of count 1, asserted a claim by Mr. and Mrs. Virgil, jointly, for loss of consortium as a result of the alleged negligence of the defendants.

Mrs. Virgil testified that she purchased the pint-size thermos while shopping at Kash N' Karry two or three months prior to the implosion. Every weekday morning she filled it with coffee and a little milk and took it to work, carrying it either by its handle or in a bag with her shoes. On Saturday mornings, she filled it with coffee and milk and carried it downstairs to the den, where she spent most of the day studying. Although the thermos bottle bore a label, "Easy To Keep Clean," there were no instructions as to how to clean the thermos and no indication that any normal manner of cleaning it might damage it. Mrs. Virgil described how she washed it, filling it at night with a mild solution of baking soda in warm water, then washing it the following morning with a bottle brush. She denied dropping the thermos or misusing, abusing or damaging it in any way. One morning, after pouring coffee into the thermos, she started to pour milk into it when it imploded, throwing hot coffee and glass into her face and injuring her eye. Appellants presented no expert testimony to give any scientific explanation for the implosion.

At the conclusion of the plaintiffs' case, the trial judge granted the defendants' motion for directed verdict as to all claims, holding that the Virgils had presented no evidence that the bottle was defective when purchased.

Appellants contend that the trial judge erred in directing the verdict because they had produced sufficient evidence to warrant submission of the case to the jury on the issue of negligence in failing to warn of inherent danger, on the issue of breach of implied warranty, and on the issue of strict liability. They also contend that the judge erred "in ruling as a matter of law that a period of three months from purchase to the accident increases the plaintiffs' burden of proof." There is no contention of error in the granting of the motion as to the claim for breach of express warranty.

We find ourselves in agreement with appellants as to the claims for breach of implied warranty and strict liability (counts 3, 4, 5 and 6); we disagree with appellants as to the negligence claims (counts 1 and 7). It will not be necessary to address appellants' final contention, but we will refer to it in our discussion of the other issues.

### Motion for Directed Verdict

At the time of the trial, Md.Rule 552 provided that in a jury trial any party might move, at the close of his opponent's evidence or at the close of all evidence, for a directed verdict in his favor on any or all of the issues.[1] In ruling upon a defendant's motion for directed verdict, the court was required to consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the plaintiffs. *Campbell v. Patton*, 227 Md. 125, 175 A.2d 761 (1961). Only if the evidence and inferences deducible therefrom led to a conclusion upon which reason-

---

1. Former Rule 552 has been superceded by current Rule 2–519, which is applicable to all actions and provides that a party may move for *judgment* on any or all of the issues at the close of his opponent's evidence or, in a jury trial, at the close of all evidence.

able minds could not differ would the issue be one of law for the court rather than one of fact for the jury. *Schaeffer v. United Bank & Trust Co.*, 32 Md.App. 339, 460 A.2d 461 (1976); *Holloway v. Hauver*, 22 Md.App. 303, 322 A.2d 890 (1974). If there was any competent evidence, however slight, supporting the plaintiff's right to recover, the court was obliged to deny the motion and submit the case to the jury. *Miller v. Michalek*, 13 Md.App. 16, 281 A.2d 117 (1971).

### Implied Warranty and Strict Liability

■■■ To support their claim that appellees breached an implied warranty of merchantability, appellants had to establish that a warranty existed, that the warranty was breached, and that the breach was the proximate cause of the injury. *Mattos, Inc. v. Hash*, 279 Md. 371, 368 A.2d 993 (1977); *Sheeskin v. Giant Food, Inc.*, 20 Md.App. 611, 318 A.2d 874 (1974). If the seller of goods is a merchant with respect to goods of that kind, Md.Comm.Law Code Ann. § 2–314, a warranty of merchantability is implied in the contract of sale. To be merchantable, the goods must at least be fit for the ordinary purposes for which they are sold and conform to any promises or affirmations of fact made on the container or label.[2]

---

2.  Md.Comm.Law Code Ann. § 2–314 provides:

    (1) Unless excluded or modified (§ 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. Notwithstanding any other provision of this title

    (a) In §§ 2–314 through 2–318 of this title, "seller" includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer; and

    (b) Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer.

    (2) Goods to be merchantable must be at least such as

    (a) Pass without objection in the trade under the contract description; and

    (b) In the case of fungible goods, are of fair average quality within the description; and

Strict liability in tort, on the other hand, is described in the Restatement (Second) of Torts § 402 A, as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

■ To recover on either theory—implied warranty or strict liability—the plaintiff in a products liability case must satisfy three basics from an evidentiary standpoint: (1) the existence of a defect, (2) the attribution of the defect to the seller, and (3) a causal relation between the defect and the injury. *Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976); *Jensen v. American Motors Corp.*, 50

---

(c) Are fit for the ordinary purposes for which such goods are used; and

(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) Are adequately contained, packaged, and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (§ 2–316) other implied warranties may arise from the course of dealing or usage of trade.

(4) Subsections (1) and (2) of this section apply to a lease of goods and a bailment for hire of goods that pass through the physical possession of and are maintained by the lessor, sublessor, or bailor.

Md.App. 226, 437 A.2d 242 (1981); *see* Digges, *Product Liability in Maryland Revisited,* 7 U.Balt.L.Rev. 1 (1977).

We reject the appellees' contention that it was necessary for the appellants to produce expert testimony to establish the existence of a defect. The general rule is well established that expert testimony is only required when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman. Expert testimony is hardly necessary to establish that a thermos bottle that explodes or implodes when coffee and milk are poured into it is defective. When a product fails to meet the reasonable expectations of the user, "the inference is that there was some sort of a defect, a precise definition of which is unnecessary." *Heaton v. Ford Motor Co.,* 248 Or. 467, 435 P.2d 806 (1967).

In granting appellees' motion for directed verdict, the trial judge stated that he was "unable to discern that the thermos was not fit for the ordinary purposes for which it was intended ...," citing *Eaton Corp. v. Wright,* 281 Md. 80, 375 A.2d 1122 (1977) and *Jensen v. American Motors Corp., supra.* With regard to the claim based on strict liability, the trial judge found that the Virgils had failed to produce evidence that the thermos was defective when purchased, stating that "the passage of time increases the burden upon the claimant" and that "substantial time [had] elapsed between the purchase and the accident." The general principles regarding sufficiency of evidence that are discussed in the cases cited by the trial judge are applicable to either breach of implied warranty of merchantability or strict liability.

In *Eaton,* the plaintiffs were injured while using a propane torch. Highly inflammable gas was released from the fuel canister after the torch head had been removed, causing the canister to explode. The Court of Appeals held that evidence of an explosion one hour after purchase, in the absence of misuse or alteration, established a prima facie case of strict liability on the part of the manufacturer of the

fuel canister. In addition, the Court held that there was insufficient evidence to establish a breach of warranty for merchantability by Eaton, the manufacturer of the valve pin, since there was no evidence that the valve would not operate properly in the absence of damage to the bridge of the valve core. This damage had been caused by the faulty installation of the valve pin by the third party plaintiff, the manufacturer of the fuel canister.

Similarly, this court held in *Jensen* that where the driver of an automobile testified only that he heard a squeal in the tires and then lost control there was a complete absence of essential facts from which an inference of a defect could reasonably be drawn. There was no evidence that established any connection between the squealing of tires and the alleged defect in the vehicle's steering mechanism. In the absence of testimony that the steering mechanism locked or that the car behaved erratically, the plaintiffs were unable to establish that the accident more probably than not was caused by a defective steering mechanism.

As we stated in *Jensen, supra*, 50 Md.App. at 232, 437 A.2d 242 proof of a defect must arise above surmise, conjecture or speculation; and one's right to recovery may not rest on any presumption from the happening of an accident. As Dean Prosser noted, "The bare fact that an accident happens to a product ... is usually not sufficient proof that it was in any way defective.... On the other hand, the addition of very little more in the way of other facts ... may be enough to support the inference." Prosser, *The Fall of the Citadel*, 50 Minn.L.Rev. 791, 843–44 (1966). It is the plaintiff's burden to establish that it is more probable than not that the defect existed at the time of sale. An inference of a defect may be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration. 51 A.L.R.3d § 2[b]. In *Jensen*, the plaintiffs failed to present evidence that would have negated other causes of the accident. In this case, however, the appel-

lants presented evidence that the product had been neither altered nor misused.

It would seem to be axiomatic that the defect that caused the implosion either existed at the time Mrs. Virgil bought the thermos or was created thereafter. Mrs. Virgil's testimony, if believed by the trier of fact, tended to eliminate any likelihood that the defect that caused the implosion was created after Mrs. Virgil purchased the thermos. Consequently, her testimony gave rise to a reasonable inference that the thermos was defective when she acquired it. The effect of lapse of time on causation is a factor to be considered by the trier of fact in determining the existence of a defect. W. Prosser, *Prosser v. Keeton on Torts* 282–83 (5th ed. 1984); *see Mickle v. Blackmon,* 252 S.C. 202, 166 S.E.2d 173 (1969); *Balido v. Improved Machinery Inc.,* 29 Cal.App.3d 633, 105 Cal.Rptr. 890 (1972). A two or three month interval between purchase and the alleged implosion, however, does not amount to such a "substantial" time as to bar recovery as a matter of law.

### Failure to Warn

Products liability law imposes on a manufacturer a duty to warn if the item produced has an inherent and hidden danger that the producer knows or should know could be a substantial factor in causing injury. *Moran v. Faberge, Inc.,* 273 Md. 538, 332 A.2d 11 (1975). This duty to warn of latent dangers inherent in the use of the product extends beyond intended uses to include uses that are reasonably foreseeable. *Moran v. Williams,* 19 Md.App. 546, 313 A.2d 527 (1974).

In the case *sub judice,* the claim that appellees negligently failed to warn of the "dangerous propensities of the product" fails simply because there was no evidence that either of the appellees knew or should have known that the thermos bottle presented a danger. Assuming that the thermos had a latent defect that caused it to implode, there

is nothing in the evidence to suggest that either the manufacturer or the retailer were or should have been aware of that defect.

Appellants suggest that the thermos label, which recommended that the product not be used by children and advised potential users that the product contained glass, permits an inference that the manufacturer had reason to know that the thermos would be inherently dangerous for a reasonably foreseeable use. Recognizing that a product partially composed of glass is breakable, however, hardly constitutes awareness that the product is defective.

We hold, therefore, that although the court erred in granting a directed verdict as to those counts asserting claims for breach of implied warranty and strict liability, it did not err in granting a directed verdict as to those counts based on assertions of negligence.

JUDGMENT AFFIRMED AS TO THE FIRST, SECOND AND SEVENTH COUNTS OF THE DECLARATION BUT REVERSED AND REMANDED FOR NEW TRIAL AS TO THE THIRD, FOURTH, FIFTH AND SIXTH COUNTS.

COSTS TO BE PAID ONE–HALF BY APPELLANTS, ONE–HALF BY APPELLEES.