**HARTFORD CASUALTY INSURANCE COMPANY**

v.

**MARPAC CORPORATION**

**No. CIV. JFM–01–918.**

United States District Court, D. Maryland.

April 2, 2002.

---

Jeffrey Allan Worthers, Sedica Sawez, Niles Barton and Wilmer LLP, Baltimore, MD, for Plaintiff.

Michael J. McAuliffe, Quinn, McAuliffe, Rowan & McLindon, Rockville, MD, Paul D. Krause, Wilson Elser Moskowitz Edelman and Dicker LLP, Walter L. Williams, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Washington, DC, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff, Hartford Casualty Insurance Co. ("Hartford") has brought a products liability suit against the Marpac Corp.

("Marpac") for the alleged malfunctioning of a sound conditioning device manufactured by Marpac. Now pending before me are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, Marpac's motion will be granted and Hartford's motion will be denied.

## I.

On or about March 28, 1998, a fire occurred at 8555 16th Street, Silver Spring, Maryland, Suite No. 403. Suite 403 was occupied by three doctors. At the time of the fire, the doctors' office was closed. As a result of the fire, the owner of the building, Summit Holdings, LLC, and a tenant of the building, Akman Associates, claimed insurance proceeds with Hartford. Hartford seeks reimbursement for those insurance proceeds.

The Montgomery County fire department determined that the fire self-extinguished. The investigators from the fire department determined that the point of origin of the fire was in the waiting room of Suite 403 on the interior wall to the right of the entrance door. The investigators found a plug inserted into an electrical outlet on the wall. Attached to the plug were the burnt remains of an electrical appliance. After speaking to the tenants of the suite, the investigators determined that the only appliance plugged into the wall at the point of origin was a sound conditioning device, Model 900 White Noise Machine, manufactured by Marpac. The tenants of suite 403 confirmed this during their depositions. The Model 900 White Noise Machine that allegedly caused the fire was purchased by one of the tenants in 1989 or 1990 in new condition.

On April 2, 1998, Hartford hired Ward Caddington to investigate the cause of the fire. By studying the suite, Caddington determined that the fire was caused by the sound conditioning device. Caddington ex-pressed no opinion and made no determination as to how the sound conditioning device caused the fire. Caddington recovered the remains of the sound conditioning device, the duplex electrical outlet into which the device was plugged, various pieces of copper electrical conductors, and another sound conditioning device that was located on the opposite side of the waiting room.

Caddington turned over the sound conditioning devices, the electrical outlet and the wires to Plaintiff's expert, Dr. George McDuffie. Dr. McDuffie examined both sound conditioning devices. Based on these examinations, McDuffie made five conclusions:

1. It is [his] opinion that the damaged noise maker was connected to a source of 120 volt electrical energy at the time of the fire; i.e., plugged in to a source of electricity. This opinion is based on the evidence of electrical arcing found on the line cord.

2. It is [his] opinion that the motor of the damaged noise maker was electrically energized at the time of the fire; i.e., it was turned ON. This opinion is based on the evidence of electrical burning found on the motor field winding.

3. It is further [his] opinion that the damaged noise maker malfunctioned and caused the fire. This opinion is based, in part, on Mr. Caddington's determination of the origin of the fire, the location of the noise maker in this area of origin, and his elimination of other sources of ignition in the area of origin. It is further based on [his] determination that the noise maker was energized and turned ON at the time of the fire, evidence of electrical arcing on the line cord and motor field winding, and on [his] conclusion that the plastic used in its case was not fire retardant.

4. The exact nature of the malfunction is unknown. Two possibilities have been considered. The line cord may have malfunctioned and ignited something in the case of the device. The location of the arc damage on the line cord indicates that arc damage occurred inside the case. The second malfunction considered is that the rotor of the motor 'locked up' for some unknown reason, the field winding of the motor heated up to a temperature at which the insulation on the winding ignited resulting in ignition of the case and other combustible components inside the case. The second possible malfunction is more probable than the first.

5. It is [his] opinion that the heat damaged duplex receptacle did not malfunction and cause the fire. No evidence of electrical damage was found on the receptacle.

(McDuffie Report, Pl.Ex. 6 at 4.) [1]

## II.

■■■ In order to prevail on a strict products liability claim in Maryland, a plaintiff must establish that:

(1) the plaintiff was the user or consumer of an alleged defective product;

(2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product;

(3) at the time of sale the product was defective;

(4) the product reached the plaintiff without substantial change in the condition in which it was sold;

(5) the defect made the product unreasonably dangerous to the plaintiff; and

(6) the defect proximately caused plaintiff's injuries.

*Shreve v. Sears, Roebuck & Co.,* 166 F.Supp.2d 378, 406–07 (D.Md.2001) (*citing Phipps v. Gen. Motors Corp.,* 278 Md. 337, 363 A.2d 955, 959 (1976)); *see also* Restatement (Second) of Torts § 402A (1965). "A product defect can arise from the design of the product, a deficiency in its manufacture, or from the absence or inadequacy of instructions or warnings as to its safe and appropriate use." *Shreve,* 166 F.Supp.2d at 407 (*citing Simpson v. Standard Container Co.,* 72 Md.App. 199, 527 A.2d 1337, 1339–40 (Md.1987)). A products liability suit may also be brought under a negligence theory or a breach of warranty theory.

■■■ Plaintiff has brought claims under each of these theories, including design defect, manufacturing defect, failure to warn, breach of implied warranty, and negligence. Under each of these theories, Plaintiff must establish the existence of a defect. *Watson v. Sunbeam Corp.,* 816 F.Supp. 384, 387 n. 3 (D.Md.1993) ("The elements of proof are the same whether the claim [is] characterized as one for strict liability or negligence ... or breach of warranty.") (citations omitted); *see also Ford Motor Co. v. Gen. Accident Ins. Co.,* 365 Md. 321, 779 A.2d 362, 369 (2001) ("We consistently have held that a plaintiff must prove the existence of a defect at the time the product leaves the manufacturer to recover on an implied warranty claim, as well as with regard to strict liability and negligence claims."). "Proof of a defect must arise above surmise, conjecture or speculation; and one's right to recovery may not rest on any presumption from the

---

1. Defendant's expert, Dr. Richard Martin, completed a report in which he concludes that the fire did not originate inside the sound conditioning device. However, for purposes of this opinion, I must, of course, view the evidence in the light most favorable to the plaintiff and assume that Martin's conclusions are incorrect and that McDuffie's conclusions are accurate.

happening of an accident." *Virgil v. "Kash N' Karry" Serv. Corp.*, 61 Md.App. 23, 484 A.2d 652, 657 (1984) (citation omitted).

The only evidence presented by the plaintiff to establish the existence of a defect is the opinion and testimony of McDuffie. For example, the plaintiff presents no evidence that the device was not manufactured in accordance with the product's design specifications, that a certain feature of the product design was particularly dangerous or that the defendant failed to include necessary warnings with the device. More importantly, McDuffie actually testified that he could not determine if there was a defect. Specifically, McDuffie stated:

> First of all, I look for evidence of malfunction that could start a fire in a product. Whether or not those come from a defect, be it a design defect or a manufacturer's defect, or a defect that has been caused by the user's way he's handled the device. So it's been caused by the user's way he handled the device. Maybe he stepped on it. I first looked for evidence of malfunction. That's all I did in this case.... Whether the malfunction was due to a design defect, a manufacturing defect, a user-introduced defect, I don't know.

(McDuffie Dep. at 60–61, Def. Ex. 1.)[2] Thus, Plaintiff's present no evidence of a defect, particularly, a defect that existed at the time of sale in 1989 or 1990.[3]

■ It is true that in some circumstances a defect may be inferred.

> For example, the steering mechanism of a new automobile should not cause the car to swerve off the road ...; the drive shaft of a new automobile should not separate from the vehicle when it is driven in a normal manner ...; the brakes of a new automobile should not suddenly fail ...; and the accelerator of a new automobile should not stick without warning, causing the vehicle suddenly to accelerate.

*Phipps*, 363 A.2d at 959.[4] This, however, is not one of those circumstances because the owners of the noise conditioning device in question owned it for eight or nine years before the fire occurred. Such a substantial lapse in time must be considered in determining if a defect exists. *See Virgil*, 484 A.2d at 657.

Since the plaintiff has presented no evidence that the noise conditioning device was defective and this is not a scenario in which a defect should be automatically inferred, the plaintiff cannot prevail on any of its claims. Accordingly, I will grant summary judgment in favor of the defendant on all counts.

A separate order is attached.

## ORDER

As stated in the accompanying memorandum, it is, this 2nd day of March 2002

---

**2.** McDuffie also performed a test in which he locked the rotor of the other noise conditioning device found in the suite. McDuffie then ran the motor for thirteen minutes at which time the machine created a burning smell. Even assuming a locked rotor on the device caused the fire, there is no evidence that the rotor locked as a result of a defect.

**3.** I note that although the parties dispute whether a "risk/utility test" or a "consumer expectation test" should be applied in determining whether there is a defect, it is irrele-

vant. The plaintiff presents no evidence regarding a defect under any test. Evidence of a malfunction eight years after a product is purchased is fundamentally different than evidence of a defect when the product was sold.

**4.** Other courts have made similar findings in other circumstances. For example, the classic "exploding bottle" scenario is one circumstance where a defect has been determined to be obviously existent. *See Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 213 (7th Cir. 1994).

ORDERED

1. Defendant's motion for summary judgment is granted;

2. Plaintiff's motion for summary judgment is denied;

3. Judgment is entered in favor of defendant; and

4. This case is closed.