UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SCHMITZ-WERKE GMBH + CO.,
                    *Plaintiff-Appellee,*

v.

ROCKLAND INDUSTRIES, INCORPORATED;
ROCKLAND INTERNATIONAL FSC,
INCORPORATED,
                    *Defendants-Appellants.*

No. 00-1125

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-97-4353-CCB)

Argued: December 5, 2000

Decided: June 21, 2002

Before WIDENER and KING, Circuit Judges, and
William L. GARWOOD, Senior Circuit Judge of the
United States Court of Appeals for the Fifth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Barry Lawrence Cohen, BARRY L. COHEN, P.C., Baltimore, Maryland, for Appellants. Daniel Francis Crowley, Kronberg, Germany, for Appellee. **ON BRIEF:** Mark R. Berman, MARK R.

BERMAN & ASSOCIATES, Baltimore, Maryland, for Appellants. Thomas L. Crowe, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

On December 30, 1997, Plaintiff-Appellee Schmitz-Werke (Schmitz) filed a complaint in the United States District Court for the District of Maryland alleging that Defendant-Appellant Rockland International (Rockland) had breached a warranty under the United Nations Convention on the International Sale of Goods (CISG), 15 U.S.C. App., by supplying defective drapery fabric. Rockland filed a counterclaim against Schmitz seeking recission of a settlement agreement between the parties and recovery of moneys paid Schmitz under that agreement. Both parties moved for summary judgment, and on May 26, 1999, the district court granted Rockland summary judgment on its counterclaim, but proceeded to trial on Schmitz' complaint. A bench trial took place from October 25 through 28, 1999, and on November 5, 1999, the district court found for Schmitz and orally issued on the record its findings of fact and conclusions of law. Judgment was entered in favor of Schmitz on its claim and in favor of Rockland on its counterclaim on December 30, 1999. Schmitz does not challenge the district court's judgment on Rockland's counterclaim, but Rockland now appeals that portion of the court's judgment in favor of Schmitz. We affirm the judgment of the district court.

*FACTS AND PROCEEDINGS BELOW*

Rockland is a Maryland corporation that manufactures drapery lining fabric. In the early to mid 1990s, Rockland manufactured a type of drapery fabric called Trevira Blackout FR (Trevira). "Blackout" refers to the fabric's ability to block light completely. The fabric was

manufactured to meet European flame resistance standards, and was intended for sale in European markets. Rockland no longer manufactures this fabric, and claims that this is because the product did not meet its volume requirements, while Schmitz maintains that Rockland discontinued Trevira because of numerous problems with the material.

Schmitz is a German company that manufactures, prints, and sells finished decorative fabrics in Germany and in other countries. In 1993, a Rockland representative introduced the Trevira fabric to Schmitz, and during their negotiations Rockland's representatives stated that the fabric was particularly suited to be a printing base for transfer printing. Transfer printing is a process for imprinting the base fabric with dyes of particular colors or patterns. In transfer printing, the fabric is drawn over a heated metal cylinder along with a sheet of transfer paper that contains the dye. The dye is heated by the cylinder and turns into a gas, which is picked up by the fibers in the fabric. Schmitz does not transfer print its fabrics itself. Instead, it relies on another German company, PMD, which specializes in making transfer print paper and in transfer printing fabrics.

Schmitz initially placed an order for about 200 meters of the Rockland fabric for testing. The sample was shipped to PMD, which transfer printed it. On receipt of the test results, Schmitz notified Rockland that there were several problems with the fabric but that in general they were satisfied with the material. After this test, Schmitz placed an initial order of 15,000 meters of Trevira, which was shipped via ocean freight in mid-August 1994. Schmitz noted some additional problems with this initial shipment, but decided to go ahead and print the material. After the printing, additional problems with the fabric became apparent, and a Rockland representative was offered a chance to inspect the fabric. There was conflicting testimony at trial about the results of a meeting between Schmitz and Rockland's representative that followed in October of 1994, but the district court credited Schmitz' version of events. According to Schmitz, despite some problems with the Trevira fabric, Rockland urged Schmitz to continue printing the fabric, and claimed that the lower quality portions of the Trevira fabric could successfully be transfer printed with patterns (as opposed to being printed with solid colors). In November 1994, after

this meeting, Schmitz placed another order of Trevira fabric, this time for 60,000 meters.

PMD, meanwhile, was continuing to print the original shipment of the fabric. In December 1994, PMD told Schmitz about some of the problems it observed with the fabric. In February 1995, Schmitz had WKS, another German company, inspect part of the new order that Rockland had sent as part of the November 1994 order. On March 20, 1995, WKS issued its report, which indicated that it had found some problems with the Trevira fabric. By April of 1995, the post-printing percentage of fabric that was classified as "seconds" (lower-grade material) was between 15% and 20%.

On June 21, 1995, Schmitz contacted Rockland and indicated that they wanted to return approximately 8,000 meters of fabric, and eventually Schmitz shipped that amount back to Rockland. There were extended discussions between Rockland and Schmitz about how to settle this dispute, but eventually these discussions broke down and this suit followed.

After a bench trial, the district court issued its findings of fact and conclusions of law in an oral opinion on November 5, 1999. The parties agreed that the CISG governed the transaction in this case, although the correct interpretation of that treaty was (and still is) in dispute. The district court found that Rockland gave Schmitz a warranty of fitness for a particular purpose (transfer printing) under Article 35(2)(b) of the CISG. 15 U.S.C. App. Art. 35(2)(b). The court also found that the Trevira fabric sold by Rockland had latent defects which were not detectable before the fabric was transfer printed, and that Schmitz' continued printing of the fabric even after it began to discover problems was reasonable since it was at the express urging of Rockland[1] and was in any event the best way to mitigate its damages. *See id.* at 750-53. The court specifically held that the goods did not conform to the warranty Rockland had given Schmitz, and that Schmitz had met its burden of proving that the defect existed at the

---

[1]At trial, an issue of apparently some contention was the status of a sales representative as a possible agent of Rockland. Rockland does not challenge on appeal the district court's finding that this representative was indeed Rockland's agent.

time the fabric left Rockland's plant. *See id.* at 754. In making this ruling, the court held that Schmitz need not prove the exact mechanism of the defect, and that showing that the transfer printing process PMD had used on the fabric was ordinary and competent was enough to establish that the Trevira fabric was unfit for the purpose of transfer printing. *Id.* at 756-57. Having found for Schmitz, the court awarded damages in dollars and converted those dollars to Deutche Marks using the exchange rate as of the time Schmitz discovered the defects. Rockland now appeals.

## *DISCUSSION*

Findings of fact should not be set aside unless they are clearly erroneous. Fed. R. Civ. P. 52(a). Similarly, "due regard should be given to the opportunity of the trial court to judge the credibility of witnesses." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable*, 65 F.3d 1113 (4th Cir. 1995). The district court's conclusions of law are reviewed *de novo*. *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1383 (4th Cir. 1995).

Both parties agree that this case is governed by the CISG, but there is some disagreement concerning how this Court should interpret that treaty. Case law interpreting the CISG is rather sparse. *See Claudia v. Olivieri Footwear Ltd.*, 1998 WL 164824, *4 (S.D.N.Y.). When two nations are signatories to the CISG, the treaty governs contracts for the sale of goods between parties whose places of business are in those two nations, unless the contract contains a choice of law clause. *See* CISG, 15 U.S.C. App., Art. 1(1)(a), *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027-28 (2nd Cir. 1995). Courts interpreting the CISG should look to the language of the CISG and to the general principles on which the Convention is based. *See id.* at 1027. The CISG directs that "its interpretation be informed by its 'international character and . . . the need to promote uniformity in its application and the observance of good faith in international trade.'" *Id.* at 1028 (quoting CISG, 15 U.S.C. App., Art. 7(1)). Case law interpreting provisions of Article 2 of the Uniform Commercial Code that are similar to provisions in the CISG can also be helpful in interpreting the convention. *Id.* at 1027.

Rockland claims that the law of Maryland also governs this case. The CISG provides that private international law is the default law to apply to a question governed by the Convention that is not settled under its own terms. CISG, 15 U.S.C App., Art. 7(2).[2] The parties agree that private international law would apply the choice of law rules of the forum state (Maryland), which in this case would choose to apply the law of the contracting state. *See Guiness PLC v. Ward*, 955 F.2d 875, 898 n.13 (4th Cir. 1992). However, a court should only reach private international law if the CISG's text, interpreted in conformity with the general principles on which the CISG is based, does not settle the issue at hand. *See* CISG, 15 U.S.C. App., Art. 7(2). Schmitz agrees that Maryland law applies to issues on which the CISG is silent, but notes that Maryland law should not be reached unless the CISG fails to provide a resolution of the issue.

## *CAUSATION*

Rockland argues that Schmitz must demonstrate both the existence and the nature of the defect in the fabric before it can recover for breach of warranty—and that to show the nature of that defect, expert testimony is required. Article 35 of the CISG governs the duty of the seller to deliver goods that conform with the contract. Article 35(2) lists various reasons goods may not conform with the contract, including goods which were expressly or impliedly warranted to be fit for a particular purpose.[3] In response, Schmitz argues that all it need show is that the goods were unfit for the particular purpose warranted

---

[2]The CISG provides:

> Questions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law.

*Id.*

[3]CISG, 15 U.S.C. App., Art. 35(2)(b). Under Article 35(2)(b) goods are unfit unless they "are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract, except where the circumstances show that the buyer did not rely, or that it was unreasonable for him to rely, on the seller's skill and judgment."

—transfer printing—and that it need not show precisely why or how the goods were unfit if it can show that the transfer printing process the goods underwent was performed competently and normally. Rockland is correct that Schmitz did not provide any evidence at trial that would establish the exact nature of the defect in the Trevira fabric. The text of the CISG is silent on this matter. *See* CISG, 15 U.S.C. App., Art. 35(2).

Under Maryland law,[4] Rockland is correct that a plaintiff in a products liability case must show that the product in question is defective, even if the cause of action is for breach of an express or implied warranty. *Virgil v. "Kash 'N' Karry" Service Corp.*, 61 Md. App. 23, 30, 484 A.2d 652 (1984), *cert. denied*, 302 Md. 681, 490 A.2d 719 (1985). However, Rockland's resort to Maryland law does not aid its argument—there is no support in Maryland law for Rockland's claim that the plaintiff in such a case must *always* provide expert testimony describing the exact nature of the defect.[5] The district court in this case did not rule that expert testimony was not required to show the nature of the problem with the Trevira fabric. Instead, the district court held that since Schmitz had submitted sufficient evidence of the competence of PMD's transfer printing process, it was proper to infer that the fabric was not suited for that process, even without direct evidence of the precise nature of the fabric's unsuitability. Schmitz argues that since it did submit expert testimony regarding the transfer printing process, even if such testimony is required, Schmitz has satisfied its burden, and the district court's ruling in their favor is supported by the evidence. We agree with Schmitz.

---

[4]As noted above, the parties agree that Maryland law applies in this case on any issue on which the CISG is silent.

[5]In *Virgil*, the Maryland Special Court of Appeals rejected a claim that expert testimony was necessary to establish the existence of a defect in that case, and noted that "[t]he general rule is well established that expert testimony is only required when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman." *See Virgil*, 61 Md. App. at 31. Expert testimony is not required on matters of which the jurors would be aware by virtue of common knowledge. *Babylon v. Scruton*, 215 Md. 299, 307, 138 A.2d 375 (1958).

Under either the CISG or Maryland law, Schmitz may prevail on a claim that the fabric was unfit for the purpose for which it was expressly warranted (transfer printing) by showing that when the fabric was properly used for the purpose Rockland warranted, the results were shoddy—even if Schmitz has introduced no evidence as to just *why* or how the fabric was unfit. Schmitz has shown that the fabric was defective—the fabric's defect was that it was unfit for transfer printing. Rockland attempts to counter this argument by claiming that this improperly shifts the burden of proof. Rockland's concerns are misplaced—Schmitz still must prove that the transfer printing process was ordinary and competently performed, and still must prove that the fabric was defective—it just permits Schmitz to do so without proving the exact nature of the defect.

There was significant evidence regarding PMD's transfer printing process presented at trial (including expert testimony), and the court's finding that the PMD printing process was ordinary and competent is not clearly erroneous. The district court found that Rockland warranted its fabric to be fit for transfer printing, that the fabric was transfer printed in a normal and competent way, and that the resulting printed fabric was unsatisfactory. This is enough to support the district court's factual finding in favor of Schmitz on the warranty claim —the fabric was not fit for the purpose for which it was warranted. The district court's findings as to defect in this respect are not clearly erroneous; nor did the district court err in law in regard thereto.

## *RELIANCE*

Rockland also argues that even if the court properly found that the Trevira fabric was not particularly well suited for transfer printing as warranted, Schmitz cannot recover on such a warranty because it did not in fact rely on Rockland's advice as required under CISG Article 35(2)(b). Rockland is correct that Article 35(2)(b) of the CISG requires that the buyer reasonably rely on the representations of the seller before liability attaches for breach of a warranty for fitness for a particular purpose. *See* CISG Art. 35(2)(b). The district court explicitly found that Schmitz relied on the statements of Rockland's representative that the Trevira fabric was particularly well suited for transfer printing. The court also found that Schmitz continued to print the fabric with the express consent of Rockland after it discovered

and reported problems with the fabric. The district court's finding that Schmitz relied on Rockland's statements proclaiming the Trevira fabric's suitability for transfer printing is supported by the evidence and was not clearly erroneous.

*EXCHANGE RATE*

Rockland also argues that the district court erred in the manner in which it converted the award into German currency. The district court used the exchange rate as of the date Schmitz learned of the problems with the Trevira fabric. In contrast, the general rule is that the exchange rate as of the date of the award should be used. *See* Restatement (Second) of Conflict of Laws §144 (1971), *see also Vlachos v. M/V Proso*, 637 F.Supp. 1354, 1376 (D. Md. 1986). Some courts, however, use the exchange rate on the day of breach. *See Middle East Banking Co v. Citibank*, 821 F.2d 897, 902 (2nd Cir. 1987) (noting that New York courts apply the "breach-day rule"). The CISG is silent on this issue, and it is proper for courts to resort to private international law in such situations. *See* Joanne M. Darkey, *A U.S. Court's Interpretation of Damage Provisions Under the U.N. Convention on Contracts for the International Sale of Goods: A Preliminary Step*, 15 J.L. & Com. 139, 150 (1995). As discussed above, the parties agree that private international law would apply the choice of law rules of the forum, Maryland, and that since Maryland's choice of law rules apply the law of the place of contract, Maryland substantive law should apply. We agree that in the absence of controlling language in the CISG, Maryland substantive law applies. But unfortunately there does not appear to be any Maryland law on this topic. The one Maryland case discussing this issue applied the date of award rule, but in that case a federal district court applied admiralty law, not Maryland law. *See Vlachos*, 637 F.Supp. at 1376.

There is no clear resolution of this issue that is dictated by the CISG or by Maryland law. And, we can discern no particular equitable advantage to either of the two rules—it is not clear that either position more fairly compensates an injured party or does so under the discrete facts here. Under these particular circumstances, the district court's decision to use the exchange rate as of the date of breach was not an abuse of discretion and we decline to disturb it.

*CONCLUSION*

Accordingly, the judgment of the district court is

*AFFIRMED*.