UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1450

DONALD SHONK,

             Plaintiff - Appellant,

        v.

FOUNTAIN POWER BOATS; YANMAR AMERICA CORPORATION; MERCURY
MARINE,

             Defendants - Appellees,

        and

MACK BORING & PARTS COMPANY,

             Defendant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   William D. Quarles, Jr., District
Judge.  (1:07-cv-00257-WDQ)

Argued:  May 12, 2009                  Decided:  July 16, 2009

Before WILKINSON and KING, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James Daniel Scharville, KAHN & ASSOCIATES, LLC,
Cleveland, Ohio, for Appellant.  William Charles Bailey, Jr.,
SIMMS & SHOWERS, LLP, Baltimore, Maryland, for Appellee Fountain
Power Boats; Walter Laurence Williams, WILSON, ELSER, MOSKOWITZ,

EDELMAN & DICKER, LLP, McLean, Virginia, for Appellee Yanmar America Corporation; Scott Michael Trager, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee Mercury Marine. **ON BRIEF:** J. Bradley Winder, Jr., KAHN & ASSOCIATES, LLC, Cleveland, Ohio, for Appellant. Stephen S. McCloskey, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee Mercury Marine; Jason R. Waters, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, McLean, Virginia, for Appellee Yanmar America Corporation.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is a breach of warranty case involving a thirty-eight foot power boat (the Boat). Almost one and a half years after Donald Shonk (Shonk) purchased the Boat, he filed the present civil action against Fountain Power Boats (Fountain), manufacturer of the Boat, Yanmar America Corporation (Yanmar), manufacturer of the Boat's engines, and Mercury Marine (Mercury), manufacturer of the Boat's stern drives. Shonk alleged claims for breach of warranty under the Magnuson-Moss Warranty--Federal Trade Commission Improvement Act (the MMWA), 15 U.S.C. §§ 2301-2312, breach of warranty under the Maryland Uniform Commercial Code--Sales (the Maryland UCC), Md. Code Ann., Commercial Law §§ 2-101 to 725, and unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act (the Maryland CPA), Md. Code Ann., Commercial Law §§ 13-301, 408.[1]

Below, the district court resolved all claims adverse to Shonk. Shonk now appeals the district court's: (1) Rule 12(b)(6) dismissal of his claims against Yanmar and Mercury, see

---

[1] Shonk also initially named a fourth defendant, Mack Boring & Parts Company, which defendant the district court dismissed without prejudice early in the litigation, pursuant to a motion by Shonk. Because Mack Boring & Parts Company is not a party in the present appeal, we will not discuss it further.

Fed. R. Civ. P. 12(b)(6); (2) the district court's refusal, on the ground of futility, to grant him leave to amend his complaint in an attempt to bring Yanmar and Mercury back into the case; and (3) the district court's grant of summary judgment in favor of Fountain with respect to his MMWA claim. We affirm in toto.

I.

According to Shonk's opening brief on appeal, in August 2005, he "purchased the [B]oat for a substantial sum of $325,751.76," from American Performance Marine, in Edgewater, Maryland.[2] (Shonk's Opening Br. at 5). Almost one year later, in July 2006, Shonk reported to American Performance Marine that the exhaust coupler on the Boat's starboard engine had failed, resulting in substantial damage to the Boat's engines. In

---

[2] In support of this statement, Shonk cites to page 128 of the Joint Appendix, which is a document entitled "MARINE PURCHASE AGREEMENT." (J.A. 128). Such document, dated August 5, 2005, purports to be the written agreement whereby Shonk purchased the Boat from American Performance Marine. The document lists the retail price of the Boat at $427,455.58, but the cash sale price at $325,751.76. Although the point is not relevant to the issues on appeal, we note that in Shonk's initial complaint and in every version of the complaint he proposed thereafter, Shonk alleges either that the "price of the [Boat] and/or the total of payments is approximately $427,455.58," (J.A. 14-15, 75), or that "[t]he [B]oat was a substantial purchase for Plaintiff costing approximately $427,455.58," (J.A. 152). Shonk offers no explanation in his appellate briefing for the discrepancy.

September 2006, Shonk hired John Zahn (Zahn) of All States Marine Surveyors to inspect the Boat in order "to determine the cause of the failure of the exhaust coupler on the starboard engine and the extent of damage to both engines." (J.A. 563). In his written report, Zahn stated, under the heading "Conclusion" that "[c]atastrophic failure of the starboard engine to exhaust system coupler, caused both engines to ingest large amounts of salt laden air, causing severe corrosion of the intake systems." (J.A. 564). And although Zahn reported under the heading "Findings: General" that "[v]isual inspection of the damaged coupler revealed a split, 4 inches long in what appeared to be a seam from the manufacturing process[,]" he reported in the very next sentence that "[t]he cause of the split is unknown." (J.A. 563). Also in the "Conclusion" section of the same report, Zahn stated that "[i]nspection of the exhaust coupler revealed no cause of failure." (J.A. 564).

On December 19, 2006, Shonk filed the present civil action in Maryland state court, which Fountain timely removed to federal court on the basis of diversity of citizenship jurisdiction.[3] See 28 U.S.C. § 1332.

---

[3] We have satisfied ourselves that the district court correctly determined that it possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Shonk's initial complaint (the Initial Complaint) alleged one count under the MMWA, one count under the Maryland UCC, and one count under the Maryland CPA. In each count, Shonk indiscriminately used the term "Defendant."

Yanmar and Mercury each moved to be dismissed from the case for failure of the Initial Complaint to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Shonk opposed the motions, but in the alternative, moved for leave to file an amended complaint which pluralized the term Defendant throughout (the Proposed First Amended Complaint).

The district court granted Yanmar and Mercury's respective Rule 12(b)(6) motions and denied Shonk's motion to amend as futile. Shonk and Fountain then consented to proceed before a United States magistrate judge for all remaining proceedings, including entry of final judgment. See 28 U.S.C. § 636(c)(1). The district court entered an order of reference in this regard. Id.

Still hoping to get Yanmar and Mercury back in the case, Shonk filed a second motion to amend his complaint (the Proposed Second Amended Complaint). The Proposed Second Amended Complaint newly alleged that Fountain manufactured the Boat, Yanmar manufactured the Boat's engines, and Mercury manufactured the Boat's stern drives. The Proposed Second Amended Complaint also listed Shonk's claims under the MMWA against Fountain,

Yanmar, and Mercury in separate counts. The other claims remained lumped together. For example, Shonk's claims under the Maryland UCC against Fountain, Yanmar, and Mercury were still listed in a single count. Of relevance in this appeal, Shonk's claims against Yanmar and Mercury under the MMWA, the Maryland CPA, and the Maryland UCC continued to focus solely upon the Boat.

The magistrate judge denied the motion without prejudice, because the motion failed to comply with the Local Rule requiring a party to serve a copy of the amended pleading in which stricken and new material is identified. See Local Rule 103.6(c) (D.Md. 2004). Shonk then refiled the motion; this time attempting to cure the violation of Local Rule 103.6(c). Yanmar and Mercury opposed the refiled motion on the ground, inter alia, that allowing Shonk to file the Proposed Second Amended Complaint would prejudice them and would be futile. Nonetheless, the magistrate judge granted the motion, thus permitting Shonk to file the Proposed Second Amended Complaint.

Although Yanmar and Mercury had never consented to proceed before a magistrate judge, they filed timely objections to the magistrate judge's grant of Shonk's motion to file the Proposed Second Amended Complaint. See Fed. R. Civ. P. 72(a). At this point, the district court vacated its earlier order of reference to the magistrate judge. Upon consideration of Yanmar and

Mercury's challenge to the magistrate judge's grant of Shonk's motion to file the Proposed Second Amended Complaint, the district court concluded, in a Memorandum Opinion filed January 16, 2008, that the magistrate judge's decision was "clearly erroneous." (J.A. 593). In reaching this conclusion, the district court reasoned as follows:

> On June 26, 2007, this Court dismissed Yanmar and Mercury as defendants and denied [Plaintiff's] motion for leave to amend, asserting that the proposed amendment was futile because it failed to state a claim against Yanmar and Mercury. In ruling on dispositive matters, the Magistrate Judge must rely on this Court's prior adjudication of claims. The Magistrate Judge's order contradicted this Court's prior ruling and substantially prejudiced those dismissed from the case.
>
> Even if the Magistrate Judge had the authority to grant the amendment, the proposed amendment should have been denied as futile. There are no substantive differences between [Plaintiff's] proposed Amended Complaint, which was denied by this Court as legally insufficient, and his proposed Second Amended Complaint. Accordingly, Yanmar and Mercury's objections will be sustained.

(J.A. 593-94). In an order accompanying its Memorandum Opinion, the district court dismissed Yanmar and Mercury from the case.

In the meantime, Shonk and Fountain had conducted discovery. Fountain ultimately moved for summary judgment on all claims. On March 5, 2008, the district court granted Fountain summary judgment with respect to Shonk's claim under the MMWA (the only remaining federal claim in the case). Mistakenly believing that it only possessed subject matter

- 8 -

jurisdiction over the remaining two state law claims against Fountain pursuant to 28 U.S.C. § 1367(a), the district court dismissed such claims pursuant to 28 U.S.C. § 1367(c).

Shonk noted a timely appeal. On appeal, Shonk contends the district court erred in dismissing his claims against Yanmar and Mercury as pleaded in the Initial Complaint. Alternatively, he contends the district court abused its discretion in refusing to permit him to proceed in the case under the Proposed Second Amended Complaint. Finally, Shonk challenges the district court's grant of summary judgment in favor of Fountain with respect to his claim under the MMWA.

## II.

We first address Shonk's contention that the district court erred in dismissing, pursuant to Rule 12(b)(6), his claims under the MMWA, the Maryland UCC, and the Maryland CPA, against Yanmar and Mercury, as pleaded in the Initial Complaint. For reasons that follow, Shonk's contention is without merit.

We review Rule 12(b)(6) dismissals de novo. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Also of relevance to the district court's Rule 12(b)(6) dismissals of Shonk's claims against Yanmar and Mercury is Federal Rule of Civil Procedure 10(b), which provides as follows:

> **Paragraphs; Separate Statements.** A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . .

Fed. R. Civ. P. 10(b).


A.   Breach of Warranty Claims Under the MMWA Against Yanmar and Mercury.

In relevant part, the MMWA provides that "a **consumer** who is damaged by the failure of a supplier [or] warrantor . . . to comply with any obligation under this chapter, or under a written warranty [or] implied warranty . . . may bring suit for

- 10 -

damages and other legal and equitable relief-- . . . in an appropriate district court of the United States . . . ." 15 U.S.C. § 2310(d) (emphasis added). The MMWA defines the term "**consumer**," in relevant part, as "a buyer (other than for purposes of resale) of any **consumer product**, any person to whom such product is transferred during the duration of an implied or written warranty . . . applicable to the product, and any other person who is entitled by the terms of such warranty . . . or under applicable State law to enforce against the warrantor . . . the obligations of the warranty . . . ." Id. § 2301(3) (emphasis added). In turn, the MMWA defines the term **"consumer product,"** in relevant part, as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." Id. § 2301(1)(emphasis added).

The district court dismissed Shonk's claims under the MMWA against Yanmar and Mercury because the Initial Complaint failed to identify a consumer product supplied or manufactured by Yanmar or Mercury. Implicitly conceding that neither Yanmar nor Mercury supplied nor manufactured the Boat, Shonk argues on appeal that the district court erred in dismissing his claims under the MMWA against Yanmar and Mercury, because "when a specific boat is identified, Yanmar and Mercury should be able to determine what role they played in the manufacture of the

- 11 -

specific boat by tracing a serial number or otherwise." (Shonk's Opening Br. at 14).

Shonk's contention is fatally flawed in two respects. First, it ignores his burden at the Rule 12(b)(6) stage to allege sufficient factual matter "to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555. At best, Shonk's allegations in the Initial Complaint pertaining to his claims under the MMWA against Yanmar and Mercury constitute "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which decisively fail to meet his pleading burden. Iqbal, 129 S. Ct. at 1940. Second, Shonk's contention ignores Rule 10(b)'s mandate to state, in a separate count, each claim founded on a separate transaction or occurrence, "[i]f doing so would promote clarity." Fed. R. Civ. P. 10(b). Given the fact that Fountain manufactured the Boat, Yanmar manufactured the Boat's engines, and Mercury manufactured the Boat's stern drives, each claim under the MMWA against Fountain, Yanmar, and Mercury should have been stated in a separate count. Accordingly, it cannot be doubted that the district court properly dismissed Shonk's claims against Yanmar and Mercury under the MMWA, as pleaded in the Initial Complaint. We, therefore, affirm the district court's dismissal of those claims.

B. Deceptive and Unfair Trade Practices Claims Under the Maryland CPA Against Yanmar and Mercury.

In relevant part, the Maryland CPA provides that "any person may bring an action to recover for injury or loss sustained by him as a result of a practice prohibited by this title." Md. Code Ann., Commercial Law § 13-408(a). As pleaded in the Initial Complaint, Shonk's claims under the Maryland CPA all pertain to the sale of the Boat. For example, Shonk alleges that in connection with the sale of the Boat, "Defendant's representation that the [Boat] contained a valid warranty, which would cause effective warranty repairs to be made within a reasonable time and within the warranty period, was untrue." (J.A. 19). With one irrelevant exception, each violation of the Maryland CPA alleged by Shonk in the Initial Complaint requires that the defendant have made the untrue representation about a "[c]onsumer good[]." Md. Code Ann., Commercial Law § 13-301(2)(i), (iv).

Here, the district court dismissed Shonk's claims under the Maryland CPA against Yanmar and Mercury, because the Initial Complaint failed to identify a consumer good sold to Shonk by Yanmar or Mercury. Shonk relies upon the same arguments in challenge of the district court's dismissal of his claims under the Maryland CPA against Yanmar and Mercury as he does with respect to the district court's dismissal of his claims under

the MMWA against Yanmar and Mercury. We reject such arguments upon the same rationale that we just outlined in affirming the district court's dismissal of Shonk's claims under MMWA against Yanmar and Mercury. The Initial Complaint cannot be reasonably read to identify a consumer good sold to Shonk by Yanmar or Mercury. Accordingly, we affirm the district court's dismissal of Shonk's claims under the Maryland CPA against Yanmar and Mercury.

     C.    Breach of Warranty Claims under the Maryland UCC Against Yanmar and Mercury.

Shonk's claims under the Maryland UCC against Yanmar and Mercury are for breach of express and implied warranties. Md. Code Ann., Commercial Law §§ 2-313 to 315. The express and implied warranty provisions of the Maryland UCC relied upon by Shonk apply only "to transactions in goods . . . ." Id. § 2-102. See also id. §§ 2-313 to 315.

The district court dismissed Shonk's breach of warranty claims under the Maryland UCC against Yanmar and Mercury, because the Initial Complaint failed to identify a good warranted by Yanmar or Mercury. In challenge to such dismissals, Shonk once again relies upon his arguments about how Yanmar and Mercury should be able to determine what role they played in the manufacture of the specific boat by tracing a

serial number or otherwise. We remain unimpressed with such arguments and reject them on the same grounds that we previously rejected them in the context of his claims under the MMWA and the Maryland CPA against Yanmar and Mercury. Accordingly, we affirm the district court's dismissal of Shonk's breach of warranty claims under the Maryland UCC against Yanmar and Mercury.

III.

Shonk next challenges, as an abuse of discretion, the district court's refusal to permit him to proceed in the case under the Proposed Second Amended Complaint. Shonk's challenge is without merit.

Under Federal Rule of Civil Procedure 15(a)(2), the district "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). We have recognized that leave to amend a complaint should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). We review a district court's denial of leave to amend a complaint for abuse of discretion. Id.

Here, the district court refused to grant Shonk leave to proceed in the case under the Second Amended Complaint on the

ground that permitting such amendment would be futile.[4] We agree. To be sure, the Proposed Second Amended Complaint is far more detailed than the Initial Complaint or the Proposed First Amended Complaint. For example, the Proposed Second Amended Complaint identified Fountain as the manufacturer of the Boat, Yanmar as the manufacturer of the Boat's engines, and Mercury as the manufacturer of the Boat's stern drives. Unfortunately for Shonk, however, the additional detail is insufficient to render the Proposed Second Amended Complaint non-futile. Shonk's claims against Yanmar and Mercury under the MMWA, the Maryland CPA, and the Maryland UCC <u>continued to focus solely upon the Boat</u>. For example, although Shonk set forth his breach of warranty claim against Yanmar under the MMWA in a separate count, he did not allege that the Boat's engines were consumer products under the MMWA. Rather, he alleged that <u>the Boat</u> (which the Proposed Second Amended Complaint identifies Fountain as having manufactured and warranted) is a consumer product under the MMWA. Because neither Yanmar nor Mercury manufactured nor warranted the Boat (per Shonk's allegations in the Proposed Second Amended Complaint), Shonk's sole focus on the Boat in his

---

[4] Because we uphold the district court's refusal to grant Shonk leave to proceed under the Proposed Second Amended Complaint on the ground of futility, we do not reach the district court's alternative holding that the magistrate judge overstepped his authority in initially granting Shonk leave to proceed under the Proposed Second Amended Complaint.

- 16 -

claims against Yanmar and Mercury rendered the Proposed Second Amended Complaint futile. Accordingly, we uphold, as not an abuse of discretion, the district court's refusal to grant Shonk leave to proceed under the Second Amended Complaint.


IV.

Lastly, Shonk challenges the district court's grant of summary judgment in favor of Fountain with respect to his breach of warranty claim under the MMWA. Plaintiff's challenge is without merit.

We review the district court's grant of summary judgment de novo. Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281, 286 (4th Cir. 2004). A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining whether a genuine issue of material fact exists, we must view the evidence in the light most favorable to the nonmoving party." American Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009).

In analyzing the merits of Fountain's motion for summary judgment with respect to Shonk's breach of warranty claim under the MMWA, the district court first concluded that resolution of

whether the Boat's engines and the exhaust coupler were defectively designed or manufactured required knowledge beyond that of average laymen, and therefore, required expert testimony. Next, the district court held that the expert testimony of Zahn of All States Marine Surveyors proffered by Shonk did not carry his burden of proof on the issue.

We affirm on the reasoning of the district court. First, we agree with the district court that the manufacturing and/or design defects at issue in this case required specialized knowledge in the fields of mechanics and engineering "beyond the ken of the average layman." Virgil V. Kash N' Karry Serv. Corp., 484 A.2d 652, 656 (Md. Ct. Spec. App. 1984). Second, we agree with the district court that the proffered testimony of Shonk's expert witness Zahn was insufficient to carry his burden of proof. Although Zahn conducted an inspection of the Boat "to determine the cause of the failure of the exhaust coupler on the starboard engine and the extent of the damage to both engines," he could not identify the cause of the exhaust coupler's failure. (J.A. 343). In fact, Zahn concluded that, "[i]nspection of the exhaust coupler revealed no cause of failure." (J.A. 344). As such, Zahn could not give any opinion, beyond sheer speculation, as to whether any defect in the Boat existed when it left Fountain's control.

In sum, we affirm the district court's grant of summary judgment in favor of Fountain with respect to Shonk's breach of warranty claim under the MMWA.[5]

## V.

In conclusion, we affirm: (1) the district court's Rule 12(b)(6) dismissals of Shonk's claims against Yanmar and Mercury; (2) the district court's refusal to permit Shonk to proceed in the case under the Proposed Second Amended Complaint; and (3) the district court's grant of summary judgment in favor

---

[5] We note that, in a footnote in its Memorandum Opinion of March 5, 2008, the district court mentioned an alternative ground for granting summary judgment in favor of Fountain with respect to Shonk's breach of warranty claim under the MMWA. Specifically, the district court held that "[e]ven if Shonk had demonstrated that the engine and exhaust were defective, these components are not covered by Fountain's warranty." (J.A. 620). Given our holding, we need not and do not reach this alternative ground.

of Fountain with respect to his breach of warranty claim under the MMWA.[6]

AFFIRMED

---

[6] One last matter, not raised by either party, is worthy of attention. The district court possessed original jurisdiction over all claims in this case pursuant to diversity jurisdiction. See 28 U.S.C. § 1332. Accordingly, when the district court declared that it "obtained supplemental jurisdiction over Shonk's state law claims based upon his MMWA claim," (J.A. 621 n.7), the district court was mistaken. Concomitantly, the district court was mistaken in believing that it possessed discretion under 28 U.S.C. § 1367(c)(3) to dismiss Shonk's claims under the Maryland UCC and the Maryland CPA against Fountain. The district court should have addressed such claims on the merits. We nonetheless affirm the district court's adverse disposition of these claims, because they are merely derivative of Shonk's failed breach of warranty claim under the MMWA against Fountain.