**DELCHI CARRIER SpA, Plaintiff–Appellee–Cross–Appellant,**

v.

**ROTOREX CORPORATION, Defendant–Appellant–Cross–Appellee.**

**Nos. 185, 717, Dockets 95–7182, 95–7186.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1995.

Decided Dec. 6, 1995.

---

Thomas E. Myers, Bond, Schoeneck & King, Syracuse, NY (John J. Dee, of counsel), for Plaintiff–Appellee–Cross–Appellant.

Richard D. Rochford, Jr., Nixon, Hargrave, Devans & Doyle, Rochester, NY (Harry P. Trueheart, III, Lisa A. Dolak, Sarah D. Beisheim, of counsel), for Defendant–Appellant–Cross–Appellee.

Before: WINTER, JACOBS, and LEVAL, Circuit Judges.

WINTER, Circuit Judge:

Rotorex Corporation, a New York corporation, appeals from a judgment of $1,785,772.44 in damages for lost profits and other consequential damages awarded to Delchi Carrier SpA following a bench trial before Judge Munson. The basis for the award was Rotorex's delivery of nonconforming compressors to Delchi, an Italian manufacturer of air conditioners. Delchi cross-appeals from the denial of certain incidental and consequential damages. We affirm the award of damages; we reverse in part on Delchi's cross-appeal and remand for further proceedings.

## BACKGROUND

In January 1988, Rotorex agreed to sell 10,800 compressors to Delchi for use in Delchi's "Ariele" line of portable room air conditioners. The air conditioners were scheduled to go on sale in the spring and summer of 1988. Prior to executing the contract, Rotorex sent Delchi a sample compressor and accompanying written performance specifications. The compressors were scheduled to be delivered in three shipments before May 15, 1988.

Rotorex sent the first shipment by sea on March 26. Delchi paid for this shipment, which arrived at its Italian factory on April 20, by letter of credit. Rotorex sent a second shipment of compressors on or about May 9. Delchi also remitted payment for this shipment by letter of credit. While the second shipment was en route, Delchi discovered that the first lot of compressors did not conform to the sample model and accompanying specifications. On May 13, after a Rotorex representative visited the Delchi factory in Italy, Delchi informed Rotorex that 93 percent of the compressors were rejected in quality control checks because they had lower cooling capacity and consumed more power than the sample model and specifications. After several unsuccessful attempts to cure the defects in the compressors, Delchi asked Rotorex to supply new compressors conforming to the original sample and specifications. Rotorex refused, claiming that the performance specifications were "inadvertently communicated" to Delchi.

In a faxed letter dated May 23, 1988, Delchi cancelled the contract. Although it was able to expedite a previously planned order of suitable compressors from Sanyo, another supplier, Delchi was unable to obtain in a timely fashion substitute compressors from other sources and thus suffered a loss in its sales volume of Arieles during the 1988 selling season. Delchi filed the instant action under the United Nations Convention on Contracts for the International Sale of Goods ("CISG" or "the Convention") for breach of contract and failure to deliver conforming goods. On January 10, 1991, Judge Cholakis granted Delchi's motion for partial summary judgment, holding Rotorex liable for breach of contract.

After three years of discovery and a bench trial on the issue of damages, Judge Munson, to whom the case had been transferred, held Rotorex liable to Delchi for $1,248,331.87. This amount included consequential damages for: (i) lost profits resulting from a diminished sales level of Ariele units, (ii) expenses that Delchi incurred in attempting to remedy the nonconformity of the compressors, (iii) the cost of expediting shipment of previously

ordered Sanyo compressors after Delchi rejected the Rotorex compressors, and (iv) costs of handling and storing the rejected compressors. The district court also awarded prejudgment interest under CISG art. 78.

The court denied Delchi's claim for damages based on other expenses, including: (i) shipping, customs, and incidentals relating to the two shipments of Rotorex compressors; (ii) the cost of obsolete insulation and tubing that Delchi purchased only for use with Rotorex compressors; (iii) the cost of obsolete tooling purchased only for production of units with Rotorex compressors; and (iv) labor costs for four days when Delchi's production line was idle because it had no compressors to install in the air conditioning units. The court denied an award for these items on the ground that it would lead to a double recovery because "those costs are accounted for in Delchi's recovery on its lost profits claim." It also denied an award for the cost of modification of electrical panels for use with substitute Sanyo compressors on the ground that the cost was not attributable to the breach. Finally, the court denied recovery on Delchi's claim of 4000 additional lost sales in Italy.

On appeal, Rotorex argues that it did not breach the agreement, that Delchi is not entitled to lost profits because it maintained inventory levels in excess of the maximum number of possible lost sales, that the calculation of the number of lost sales was improper, and that the district court improperly excluded fixed costs and depreciation from the manufacturing cost in calculating lost profits. Delchi cross-appeals, claiming that it is entitled to the additional out-of-pocket expenses and the lost profits on additional sales denied by Judge Munson.

## DISCUSSION

■ The district court held, and the parties agree, that the instant matter is governed by the CISG, *reprinted at* 15 U.S.C.A. Appendix (West Supp.1995), a self-executing agreement between the United States and other signatories, including Italy.[1] Because

1. Generally, the CISG governs sales contracts

between parties from different signatory coun-

there is virtually no caselaw under the Convention, we look to its language and to "the general principles" upon which it is based. *See* CISG art. 7(2). The Convention directs that its interpretation be informed by its "international character and ... the need to promote uniformity in its application and the observance of good faith in international trade." *See* CISG art. 7(1); *see generally* John Honnold, *Uniform Law for International Sales Under the 1980 United Nations Convention* 60–62 (2d ed. 1991) (addressing principles for interpretation of CISG). Caselaw interpreting analogous provisions of Article 2 of the Uniform Commercial Code ("UCC"), may also inform a court where the language of the relevant CISG provisions tracks that of the UCC. However, UCC caselaw "is not *per se* applicable." *Orbisphere Corp. v. United States,* 726 F.Supp. 1344, 1355 (Ct.Int'l Trade 1989).

▇ We first address the liability issue. We review a grant of summary judgment *de novo. Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact" regarding Rotorex's liability for breach of contract. *See* Fed.R.Civ.P. 56(c).

Under the CISG, "[t]he seller must deliver goods which are of the quantity, quality and description required by the contract," and "the goods do not conform with the contract unless they ... [p]ossess the qualities of goods which the seller has held out to the buyer as a sample or model." CISG art. 35. The CISG further states that "[t]he seller is liable in accordance with the contract and this Convention for any lack of conformity." CISG art. 36.

▇ Judge Cholakis held that "there is no question that [Rotorex's] compressors did not conform to the terms of the contract between the parties" and noted that "[t]here are ample admissions [by Rotorex] to that effect." We agree. The agreement between Delchi and Rotorex was based upon a sample comtries.

pressor supplied by Rotorex and upon written specifications regarding cooling capacity and power consumption. After the problems were discovered, Rotorex's engineering representative, Ernest Gamache, admitted in a May 13, 1988 letter that the specification sheet was "in error" and that the compressors would actually generate less cooling power and consume more energy than the specifications indicated. Gamache also testified in a deposition that at least some of the compressors were nonconforming. The president of Rotorex, John McFee, conceded in a May 17, 1988 letter to Delchi that the compressors supplied were less efficient than the sample and did not meet the specifications provided by Rotorex. Finally, in its answer to Delchi's complaint, Rotorex admitted "that some of the compressors ... did not conform to the nominal performance information." There was thus no genuine issue of material fact regarding liability, and summary judgment was proper. *See Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 577–78 (2d Cir.1969) (affirming grant of summary judgment based upon admissions and deposition testimony by nonmoving party).

▇ Under the CISG, if the breach is "fundamental" the buyer may either require delivery of substitute goods, CISG art. 46, or declare the contract void, CISG art. 49, and seek damages. With regard to what kind of breach is fundamental, Article 25 provides:

> A breach of contract committed by one of the parties is fundamental if it results in such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract, unless the party in breach did not foresee and a reasonable person of the same kind in the same circumstances would not have foreseen such a result.

CISG art. 25. In granting summary judgment, the district court held that "[t]here appears to be no question that [Delchi] did not substantially receive that which [it] was entitled to expect" and that "any reasonable

However, the Convention makes clear that the parties may by contract choose to be bound by a source of law other than the CISG, such as the Uniform Commercial Code. *See* CISG art. 6 ("The parties may exclude the application of this Convention or ... derogate from or vary the effect of any of its provisions.") If, as here, the agreement is silent as to choice of law, the Convention applies if both parties are located in signatory nations. *See* CISG art. 1.

person could foresee that shipping non-conforming goods to a buyer would result in the buyer not receiving that which he expected and was entitled to receive." Because the cooling power and energy consumption of an air conditioner compressor are important determinants of the product's value, the district court's conclusion that Rotorex was liable for a fundamental breach of contract under the Convention was proper.

We turn now to the district court's award of damages following the bench trial. A reviewing court must defer to the trial judge's findings of fact unless they are clearly erroneous. *Anderson v. City of Bessemer,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476, 481 (2d Cir.1985), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986). However, we review questions of law, including "the measure of damages upon which the factual computation is based," *de novo. Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.,* 946 F.2d 1003, 1009 (2d Cir.1991) (internal quotation marks and citation omitted); *see also Travellers Int'l, A.G. v. Trans World Airlines,* 41 F.3d 1570, 1574–75 (2d Cir.1994).

The CISG provides:

Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach. Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

CISG art. 74. This provision is "designed to place the aggrieved party in as good a position as if the other party had properly performed the contract." Honnold, *supra,* at 503.

Rotorex argues that Delchi is not entitled to lost profits because it was able to maintain inventory levels of Ariele air conditioning units in excess of the maximum number of possible lost sales. In Rotorex's view, therefore, there was no actual shortfall of Ariele units available for sale because of Rotorex's delivery of nonconforming compressors. Rotorex's argument goes as follows. The end of the air conditioner selling season is August 1. If one totals the number of units available to Delchi from March to August 1, the sum is enough to fill all sales. We may assume that the evidence in the record supports the factual premise. Nevertheless, the argument is fallacious. Because of Rotorex's breach, Delchi had to shut down its manufacturing operation for a few days in May, and the date on which particular units were available for sale was substantially delayed. For example, units available in late July could not be used to meet orders in the spring. As a result, Delchi lost sales in the spring and early summer. We therefore conclude that the district court's findings regarding lost sales are not clearly erroneous. A detailed discussion of the precise number of lost sales is unnecessary because the district court's findings were, if anything, conservative.

Rotorex contends, in the alternative, that the district court improperly awarded lost profits for unfilled orders from Delchi affiliates in Europe and from sales agents within Italy. We disagree. The CISG requires that damages be limited by the familiar principle of foreseeability established in *Hadley v. Baxendale,* 156 Eng.Rep. 145 (1854). CISG art. 74. However, it was objectively foreseeable that Delchi would take orders for Ariele sales based on the number of compressors it had ordered and expected to have ready for the season. The district court was entitled to rely upon the documents and testimony regarding these lost sales and was well within its authority in deciding which orders were proven with sufficient certainty.

Rotorex also challenges the district court's exclusion of fixed costs and depreciation from the manufacturing cost used to calculate lost profits. The trial judge calculated lost profits by subtracting the 478,783 lire "manufacturing cost"—the total variable cost—of an Ariele unit from the 654,644 lire average sale price. The CISG does not explicitly state whether only variable expenses, or both fixed

and variable expenses, should be subtracted from sales revenue in calculating lost profits. However, courts generally do not include fixed costs in the calculation of lost profits. *See Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 495 (2d Cir.1995) (only when the breach ends an ongoing business should fixed costs be subtracted along with variable costs); *Adams v. Lindblad Travel, Inc.,* 730 F.2d 89, 92–93 (2d Cir.1984) (fixed costs should not be included in lost profits equation when the plaintiff is an ongoing business whose fixed costs are not affected by the breach). This is, of course, because the fixed costs would have been encountered whether or not the breach occurred. In the absence of a specific provision in the CISG for calculating lost profits, the district court was correct to use the standard formula employed by most American courts and to deduct only variable costs from sales revenue to arrive at a figure for lost profits.

In its cross-appeal, Delchi challenges the district court's denial of various consequential and incidental damages, including reimbursement for: (i) shipping, customs, and incidentals relating to the first and second shipments—rejected and returned—of Rotorex compressors; (ii) obsolete insulation materials and tubing purchased for use only with Rotorex compressors; (iii) obsolete tooling purchased exclusively for production of units with Rotorex compressors; and (iv) labor costs for the period of May 16–19, 1988, when the Delchi production line was idle due to a lack of compressors to install in Ariele air conditioning units. The district court denied damages for these items on the ground that they "are accounted for in Delchi's recovery on its lost profits claim," and, therefore, an award would constitute a double recovery for Delchi. We disagree.

The Convention provides that a contract plaintiff may collect damages to compensate for the full loss. This includes, but is not limited to, lost profits, subject only to the familiar limitation that the breaching party must have foreseen, or should have foreseen, the loss as a probable consequence. CISG art. 74; *see Hadley v. Baxendale, supra.*

An award for lost profits will not compensate Delchi for the expenses in question. Delchi's lost profits are determined by calculating the hypothetical revenues to be derived from unmade sales less the hypothetical variable costs that would have been, but were not, incurred. This figure, however, does not compensate for costs actually incurred that led to no sales. Thus, to award damages for costs actually incurred in no way creates a double recovery and instead furthers the purpose of giving the injured party damages "equal to the loss." CISG art. 74.

■ The only remaining inquiries, therefore, are whether the expenses were reasonably foreseeable and legitimate incidental or consequential damages.[2] The expenses incurred by Delchi for shipping, customs, and related matters for the two returned shipments of Rotorex compressors, including storage expenses for the second shipment at Genoa, were clearly foreseeable and recoverable incidental expenses. These are up-front expenses that had to be paid to get the goods to the manufacturing plant for inspection and were thus incurred largely before the nonconformities were detected. To deny reimbursement to Delchi for these incidental damages would effectively cut into the lost profits award. The same is true of unreimbursed tooling expenses and the cost of the useless insulation and tubing materials. These are legitimate consequential damages that in no way duplicate lost profits damages.

■ The labor expense incurred as a result of the production line shutdown of May 16–19, 1988 is also a reasonably foreseeable result of delivering nonconforming compressors for installation in air conditioners.

---

**2.** The UCC defines incidental damages resulting from a seller's breach as "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." U.C.C. § 2–715(1)

(1990). It defines consequential damages resulting from a seller's breach to include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." U.C.C. § 2–715(2)(a).

However, Rotorex argues that the labor costs in question were fixed costs that would have been incurred whether or not there was a breach. The district court labeled the labor costs "fixed costs," but did not explore whether Delchi would have paid these wages regardless of how much it produced. Variable costs are generally those costs that "fluctuate with a firm's output," and typically include labor (but not management) costs. *Northeastern Tel. Co. v. AT & T*, 651 F.2d 76, 86 (2d Cir.1981). Whether Delchi's labor costs during this four-day period are variable or fixed costs is in large measure a fact question that we cannot answer because we lack factual findings by the district court. We therefore remand to the district court on this issue.

The district court also denied an award for the modification of electrical panels for use with substitute Sanyo compressors. It denied damages on the ground that Delchi failed to show that the modifications were not part of the regular cost of production of units with Sanyo compressors and were therefore attributable to Rotorex's breach. This appears to have been a credibility determination that was within the court's authority to make. We therefore affirm on the ground that this finding is not clearly erroneous.

Finally, Delchi cross-appeals from the denial of its claimed 4000 additional lost sales in Italy. The district court held that Delchi did not prove these orders with sufficient certainty. The trial court was in the best position to evaluate the testimony of the Italian sales agents who stated that they would have ordered more Arieles if they had been available. It found the agents' claims to be too speculative, and this conclusion is not clearly erroneous.

## CONCLUSION

We affirm the award of damages. We reverse in part the denial of incidental and consequential damages. We remand for further proceedings in accord with this opinion.