PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-4488

———

FORESTAL GUARANI S.A.,

Appellant

v.

DAROS INTERNATIONAL, INC.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-03-cv-04821)
District Judge:  Honorable Joseph A. Greenaway, Jr.

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2010

Before:  FISHER and COWEN, *Circuit Judges*,
and PRATTER,[*] *District Judge*.

(Filed: July 21, 2010)

———————————

[*]Honorable Gene E.K. Pratter, United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

Eugene M. Banta, Jr.
322 East 86th Street
New York, NY  10028

*Counsel for Appellant*

––––––

OPINION OF THE COURT

––––––

FISHER, *Circuit Judge*.

At issue in this appeal is the interpretation of the United Nations Convention on Contracts for the International Sale of Goods as it relates to a contract dispute between two corporations, one based in the United States and the other in Argentina.  The Convention contains a provision allowing a contract to be proved even if it is not in writing but also authorizes a signatory state to make a declaration opting out of that and related provisions.  The United States has not made such a declaration; Argentina has.  The District Court concluded that Argentina's declaration imposed a writing requirement and that the absence of a written contract in this case precluded the plaintiff's claim.  We disagree with that approach.  We conclude that where, as here, one party's country of incorporation has made a declaration while the other's has not, a court must first decide, based on the forum state's choice-of-law rules, which forum's law applies, and then apply the law of the forum designated by the choice-of-law analysis.

2

We cannot decide on this record whether New Jersey or Argentine law applies here. Furthermore, because the parties have not briefed the issue and the District Court did not address it, we are reluctant to determine whether the claim asserted here would survive under either jurisdiction's laws. Accordingly, we will vacate the District Court's grant of summary judgment for the defendant and remand for further proceedings.

## I.

Forestal Guarani S.A.[1] is an Argentina-based manufacturer of various lumber products, including wooden finger-joints.[2] Daros International, Inc., is a New Jersey-based import-export corporation. In 1999, Forestal and Daros entered into an oral agreement whereby Daros agreed to sell Forestal's wooden finger-joints to third parties in the United States. Pursuant to that agreement, Forestal sent Daros finger-joints worth $1,857,766.06. Daros paid Forestal a total of $1,458,212.35. Forestal demanded the balance due but Daros declined to pay. In April 2002, Forestal sued Daros in the Superior Court of New Jersey, asserting a breach-of-contract

---

[1]The first word in the appellant's name is variably spelled in the record as "Forestal" and "Forrestal." For the sake of consistency, we adopt the former spelling.

[2]Because this is an appeal from the grant of summary judgment, we view the evidence in a light most favorable to Forestal, the nonmoving party. *See Fagan v. City of Vineland*, 22 F.3d 1296, 1299 (3d Cir. 1994) (en banc).

claim based on Daros' refusal to pay. Daros thereafter removed the case to the United States District Court for the District of New Jersey. In its answer, Daros admitted that it had paid Forestal $1,458,212.35 in exchange for the finger-joints but denied that it owed Forestal any additional money. Discovery ensued.

In June 2005, Daros moved for summary judgment, arguing that the parties lacked a written agreement in violation of the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 671 (1980), *reprinted at* 15 U.S.C. App. (1998) ("CISG"), and that Forestal could not otherwise substantiate its damages claim with credible evidence. The District Court summarily denied the motion, concluding that genuine questions of material fact existed. The Court later held a conference with the parties and ordered briefing on several specific questions regarding the applicability of the CISG. Both parties complied and agreed that the CISG governed Forestal's claim. In October 2008, the District Court granted Daros' summary judgment motion, concluding that the CISG governed the parties' dispute and barred Forestal's claim because the parties' agreement was not in writing. The Court also found that Forestal had not adduced any other evidence of its alleged agreement with Daros. Forestal has timely appealed the District Court's ruling.[3]

---

[3]After this appeal was docketed, Daros' counsel moved to withdraw from its representation of Daros. The Clerk of this Court granted that motion. Daros has not obtained new counsel

4

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's denial of summary judgment is plenary. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009). We apply the same test the District Court should have used. *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.*, 989 F.2d 635, 637 (3d Cir. 1993). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

The parties do not dispute that the CISG governs their dispute. While Daros does not deny that it had a contract with Forestal, the thrust of Daros' argument is that the parties do not have a written contract and that, under the CISG, the absence of a writing precludes Forestal's claim. While conceding that the CISG applies generally, Forestal contests the District Court's ruling on the ground that the lack of a writing, in its view, is inconsequential in light of the parties' course of dealing, as evidenced by Forestal's delivery of finger-joints to Daros and

and has not submitted an appellate brief. Its former counsel has indicated that Daros rests on its filings with the District Court to support its position in this appeal.

5

Daros' remittance of payments to Forestal, as well as an accountant's report and invoices Forestal claims show that Daros owes it money.

The CISG "applies to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States[.]" 15 U.S.C. App., Art. 1(1)(a); *see Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 444 n.7 (3d Cir. 2003). The United States ratified the CISG on December 11, 1986, Argentina ratified it on July 19, 1983, and it became effective in both countries on January 1, 1988. John O. Honnold, *Uniform Law for International Sales Under the 1980 United Nations Convention* 693-94 (2d ed. 1991). Because both the United States, where Daros is based, and Argentina, where Forestal is based, are signatories to the CISG and the alleged contract at issue involves the sale of goods, we agree with the parties that the CISG governs Forestal's claim.[4] *See*, *e.g.*, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 387 (7th Cir. 2002). To resolve the parties' dispute, we turn to the text of the CISG itself, *see*, *e.g.*, *Abbott v. Abbott*, 560 U.S. ___, 130 S. Ct. 1983, 1990 (2010) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text." (quoting *Medellín v. Texas*, 552 U.S. 491, 506 (2008)); *see also Chicago Prime Packers, Inc. v. Northam Food Trading Co.*, 408 F.3d 894, 898 (7th Cir. 2005); *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027-28 (2d Cir. 1995), giving effect to its plain

---

[4]The CISG lists several exceptions to its applicability, none of which is relevant here. *See* 15 U.S.C. App., Art. 2.

6

language "absent extraordinarily strong contrary evidence," *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982).[5]

"The CISG strives to promote certainty among contracting parties and simplicity in judicial understanding by (1) reducing forum shopping, (2) reducing the need to resort to rules of private international law, and (3) establishing a law of sales appropriate for international transactions." A. E. Butler, *A Practical Guide to the CISG: Negotiations through Litigation* § 1.08, at 1-15 (2007 Supp.) (footnote omitted). These goals are explicitly enshrined in the CISG. Article 7 directs a court, in interpreting the CISG, to be mindful of "its international character and . . . the need to promote uniformity in its application and the observance of good faith in international trade." 15 U.S.C. App., Art. 7(1). In furtherance of these principles, as relevant here, the CISG dispenses with certain formalities associated with proving the existence of a contract.

---

[5]The CISG vests private parties with a private right of action. *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 336 (5th Cir. 2003) (citing *Delchi Carrier*, 71 F.3d at 1027-28). As a treaty to which the United States is a signatory, the CISG, as opposed to state law, ordinarily controls. *See* 28 U.S.C. § 1652; *see also* David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 Tul. L. Rev. 495, 503-04 (1999). As we shall see, however, that default rule gives way under certain circumstances.

7

Specifically, Article 11 instructs that "[a] contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses." *Id.*, Art. 11. Similarly, Article 29 permits a contract modification to be proved even if it is not in writing. *Id.*, Art. 29. And Part II of the CISG, titled "Formation of the Contract," outlines requirements governing offer and acceptance but does not impose a writing requirement.

Article 11's elimination of formal writing requirements does not apply in all instances in which the CISG governs. Article 96 of the CISG carves out an exception to Article 11, Article 29 and Part II. It says that

> [a] Contracting State whose legislation requires contracts of sale to be concluded in or evidenced by writing may at any time make a declaration in accordance with article 12 that any provision of article 11, article 29, or Part II of this Convention, that allows a contract of sale or its modification or termination by agreement or any offer, acceptance, or other indication of intention to be made in any form other than in writing, does not apply where any party has his place of business in that State.

*Id.*, Art. 96.

Article 12, to which Article 96 refers, states that

8

[a]ny provision of article 11, article 29 or Part II of this Convention that allows a contract of sale . . . to be made in any form other than in writing does not apply where any party has his place of business in a Contracting State which has made a declaration under article 96 of this Convention. The parties may not derogate from or vary the effect of this article.

*Id.*, Art. 12.

The United States has not made an Article 96 declaration, so Article 11 governs contract formation in cases involving a United States-based litigant and a litigant based in another non-declaring signatory state. Argentina, however, has made a declaration under Article 96, thereby opting out of Article 11, Article 29 and Part II.[6]

---

[6]Argentina's declaration reads as follows:

In accordance with Articles 96 and 12 of the United Nations Convention on Contracts for the International Sale of Goods, any provisions of [A]rticle 11, Article 29 or Part II of the Convention that allows a contract of sale . . . to be made in any form other than in writing does not apply where any party has his place of business in the Argentine Republic.

15 U.S.C. App. at 390 n.1.

9

Our research has turned up almost no case law from courts in the United States informing how to address a case, such as this one, in which one state has made an Article 96 declaration and the other has not.[7]  Courts in foreign jurisdictions and commentators alike are divided over how to proceed in such a scenario.  *See* UNCITRAL Digest of Case Law on the United Nations Convention on the International Sale of Goods 46, 48 (2008) (outlining the conflict).  According to one school of thought, a court must at the outset conduct a choice-of-law analysis based on private international law principles to determine which state's law governs contract formation, and then apply that law to a party's claim.  *See*, *e.g.*, Henry Mather, *Choice of Law for International Sales Issues Not Resolved by the CISG*, 20 J.L. & Com. 155, 167 (2001) (citing various commentators and a decision by a Hungarian court).  Our study of the available sources on the subject establishes this position as the clear majority view.[8]  In contrast, under what

---

[7]The only decision from a court in the United States directly on point that we have unearthed is by a magistrate judge in the Southern District of Florida.  *See Zhejiang Shaoxing Yongli Printing & Dyeing Co. v. Microflock Textile Group Corp.*, No. 06-22608, 2008 U.S. Dist. LEXIS 40418 (S.D. Fla. May 19, 2008).  The District Court in this case relied on *Zhejiang* to support its conclusion.

[8]*See* 15 U.S.C. App. at 372 (reproducing an August 30, 1983, letter from the Secretary of State to the President accompanied by a Department of State legal analysis supporting the choice-of-law approach); C.M. Bianca & M.J. Bonell,

10

appears to be the minority view, a court should simply require the existence of a writing without reference to either state's law, though it is unclear what form such a writing would have to take to be considered sufficient. *See*, *e.g.*, Louis F. Del Duca, *Implementation of Contract Formation Statute of Frauds, Parol Evidence, and Battle of Forms CISG Provisions in Civil and*

---

*Commentary on the International Sales Law: The 1980 Vienna Sales Convention* 126-27 (1987); Franco Ferrari, *Writing Requirements: Article 11-13*, in *The Draft UNCITRAL Digest and Beyond: Cases, Analysis and Unresolved Issues in the U.N. Sales Convention* 213-14 (Franco Ferrari et al. eds., 2005); John O. Honnold, *Uniform Law for International Sales under the 1980 United Nations Convention* 186-91 (4th ed. 2009); Albert H. Kritzer, *Guide to Practical Applications of the United Nations Convention on Contracts for the International Sale of Goods* 143 (1989); Joseph Lookofsky, *Understanding the CISG: A Compact Guide to the 1980 United Nations Convention on Contracts for the International Sale of Goods* 174-75 (3d ed. 2008); Peter Schlechtriem & Ingeborg Schwenzer, *Commentary on the UN Convention on the International Sale of Goods (CISG)* 169-70 (2d ed. 2005); Harry M. Flechtner, *The Several Texts of the CISG in a Decentralized System: Observations on Translations, Reservations and Other Challenges to the Uniformity Principle in Article 7(1)*, 17 J.L. & Com. 187, 196-97 (1998); Mather, 20 J.L. & Com. at 166-67 (describing this position as the "prevailing view"); Larry A. DiMatteo *et al.*, *The Interpretive Turn in International Sales Law: An Analysis of Fifteen Years of CISG Jurisprudence*, 24 NW. J. Int'l L. & Bus. 299, 323-24, 327-28 (2004).

11

*Common Law Countries*, 25 J.L. & Com. 133, 138-39 (2005) (citing decisions by courts in Russia and Belgium).[9]

---

[9]Without saying so explicitly, the District Court here adopted the minority view, reasoning that where, as here, a country has opted out of Article 11 a contract must be in writing and that because Forestal had not produced a writing, its claim failed as a matter of law. In a footnote, the Court noted alternatively that a choice-of-law analysis would produce the same result, explaining that New Jersey's statute of frauds imposes a writing requirement and that Argentina's decision itself to opt out of Article 11 signified that country's writing requirement. The District Court did not conduct a choice-of-law analysis and did not explicitly consider the respective form requirements, or exceptions to those requirements, of either New Jersey or Argentine law. Instead, the District Court evidently presumed that a country's Article 96 declaration automatically translates into a requirement that a contract be in writing. But, as we explain below, the CISG does not say as much. It says only that its freedom-from-form requirements do not apply where a country has made an Article 96 declaration. Indeed, if the District Court's approach were correct, courts would have a hard time determining what precisely constitutes an adequate "writing" under these circumstances. Is it a professionally drafted document with paragraph symbols, signed and dated by both parties? Is it a scribbling on the back of a napkin? Where, as here, an Article 96 declaration makes Articles 11 and 29 and Part II of the CISG inapplicable, the CISG is silent on this point.

12

Although none of the supporters of what we perceive as the majority view have explained their reasoning in any detail, we conclude that the majority has it right. Our conclusion is compelled by the CISG's plain language. *Cf. Maximov v. United States*, 373 U.S. 49, 54 (1963) (interpreting a treaty according to its plain language); *Rocca v. Thompson*, 223 U.S. 317, 331-32 (1912) (similar). The CISG says that "[q]uestions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law [i.e. choice of law]." 15 U.S.C. App., Art. 7(2). Because Argentina has opted out of Articles 11 and 29 as well as Part II of the CISG, the CISG does not "expressly settle" the question whether a breach-of-contract claim is sustainable in the absence of a written contract. So Article 7(2) tells us to consider the CISG's "general principles" to fill in the gap. We have already outlined some of the general principles undergirding the CISG, but we fail to see how they inform the question whether Forestal's contract claim may proceed. Indeed, given the inapplicability in this case of any of the CISG's provisions relaxing or eliminating writing requirements, we do not believe that we can answer the question presented here based on a pure application of those principles alone. Given that neither the CISG nor its founding principles explicitly or implicitly settle our inquiry, Article 7(2)'s reference to "the rules of private international law" is triggered. In other words, we have to consider the choice-of-law rules of the forum state, in this case New Jersey, to determine whether New Jersey or Argentine form requirements govern Forestal's claim. *See*,

13

*e.g.*, *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 231 (1996).[10]

In making a choice-of-law determination in a breach-of-contract case, New Jersey courts ask which forum has the most significant relationship with the parties and the contract. *See State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 491-92 (N.J. 1980); *Keil v. Nat'l Westminster Bank*, 710 A.2d 563, 569-70 (N.J. Super. Ct. App. Div. 1998). To that end, the New Jersey Supreme Court has adopted the principles set

---

[10]Although the CISG's plain language obviates the need for resort to its drafting history, we note nonetheless that that history buttresses our conclusion. As one commentator has written,

> the sole fact that one party has its place of business in a State that made an Article 96 reservation does not necessarily make applicable the form requirements of that State. . . . Rather, the rules of private international [law] of the forum should dictate whether any form requirements have to be met. The legislative history of the Convention appears to corroborate this view, since at the 1980 Vienna Diplomatic Conference a proposal was rejected pursuant to which the form requirements of a State that had made an Article 96 reservation had to be applied.

Ferrari, *supra*, at 213 (footnotes omitted).

14

forth in § 188 and § 6 of the Restatement (Second) of Conflicts of Laws. *See Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993).  Section 188 directs courts to consider, among other things:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflicts of Laws § 188(2) (1971).

Section 6 lists the following nonexclusive factors relevant to a choice-of-law analysis:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2).

15

We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance. *See*, *e.g.*, *In re Montgomery Ward & Co.*, 428 F.3d 154, 166 (3d Cir. 2005); *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001). This case bolsters the rationale behind our reluctance to wade into matters that the parties have not joined and that a district court has not addressed, as the record here sheds practically no light on many, if not most, of the choice-of-law considerations listed above.

It is true that we can affirm a district court's ruling on any ground supported by the record. *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 256 n.12 (3d Cir. 2010). There is no dispute here that Forestal's contract with Daros was verbal at best, so we could feasibly skip a choice-of-law analysis and apply both New Jersey and Argentine law to Forestal's claim to test its viability. New Jersey's statute of frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." N.J. Stat. Ann. § 12A:2-201(1). While Forestal's claim might fail under that provision, the statute also makes several exceptions to the general rule. *See id.* § 12A:2-201(3). The parties have not briefed, and the record in this case prevents us from concluding definitively, whether any such exception is applicable here. As for Argentine law, we may safely assume that it requires some sort of writing, as Article 96 of the CISG permits a country to opt out of Article 11 only if its domestic law "requires contracts

16

of sale to be concluded in or evidenced by writing . . . ." 15 U.S.C. App., Art. 96. We have looked at the Argentine Civil Code; it contains several provisions governing contract formation and ways of proving a contract. Forestal's offer of proof may or may not suffice under those provisions. In the end, we think it unwise either to venture into this choice-of-law thicket – the outcome of which is determinative of this case – or to engage in a largely speculative exercise about the viability of Forestal's claim under either jurisdiction's law without the benefit of either any briefing whatsoever by the parties or any analysis by the District Court on this point. Because these issues deserve a full airing, we conclude that remand is a better course of action.

Our conclusion that remand is appropriate is also driven by the posture in which this case reaches us. Forestal is appealing from the District Court's grant of summary judgment for Daros on Daros' motion. In other words, although it did not say so explicitly, the District Court determined that Daros had met its initial burden of showing that there remained no genuine questions of material fact and that Daros was entitled to judgment as a matter of law. As we read Daros' moving papers, we understand Daros to have sought to meet that burden by advancing two main arguments. First, Daros argued that summary judgment was proper because, in its view, the CISG requires a writing in light of Argentina's Article 96 declaration and Forestal did not produce a formal written contract. We have concluded, however, that such a position is wrong as a matter of law. As we have explained, the resolution of this case requires a choice-of-law analysis to determine whether New Jersey or Argentine form requirements govern as well as an inquiry into

17

whether Forestal's offer of proof is adequate under whichever forum's law that analysis designates. In other words, Daros could not have met its initial summary judgment burden of showing that it was entitled to judgment as a matter of law when there was, in effect, no law to apply.

Second, Daros contended that Forestal had submitted no "credible evidence" of a contract with Daros. The District Court agreed with that contention, concluding that there was no evidence that the parties ever had any contract at all. It is undisputed, however, that Forestal sold wooden finger-joints to Daros and that Daros gave Forestal money in exchange. Indeed, Daros nowhere denies that the parties at the very least had a verbal contract for those sales. Furthermore, Forestal submitted an accountant's certification, with supporting documentation, as well as invoices in an effort to substantiate its claim that it is owed money. There is also deposition testimony indicating that the parties had a contract. The District Court did not expressly refer to some of these materials in its opinion, and we do not know why it evidently disregarded them. The Court also rejected Forestal's reliance on the invoices Forestal submitted, but did so based on New Jersey law alone – that is, with no parallel analysis under Argentine law – without explaining its reference to that state's law when the Court had already decided that the CISG controlled this case. In short, we cannot say at this stage that there is no genuine question of material fact as to whether the parties had or did not have some sort of contractual relationship and whether Forestal can prove as much under whatever law actually controls this case. As a consequence, we

18

are not persuaded that Daros met its initial summary judgment burden on the record as it now stands.[11]

## IV.

For the foregoing reasons, we will vacate the District Court's grant of summary judgment for Daros and remand for further proceedings. On remand, the District Court may determine, based on New Jersey's choice-of-law rules, whether New Jersey or Argentine law governs and then apply that forum's law to this case. Our disposition does not suggest that a trial is necessarily warranted. Summary judgment, or some other pretrial disposition, including a venue transfer, may be appropriate on a more developed record.

---

[11]Our dissenting colleague does not believe that we should remand this case for a choice-of-law analysis. He would hold that Forestal waived its right to pursue such an analysis by failing to press it in the District Court. To be sure, as we have noted, the parties did not address this issue in the District Court and that court did not reach it. The dissent overlooks, however, that the waiver doctrine is founded on equitable principles and that its enforcement is within our discretion. We think it would be particularly unfair to apply it against a party whose adversary elected not even to participate in this appeal. Moreover, as we have also pointed out, the District Court did not reach this issue in error; that omission does not bar us from considering it.

COWEN, <u>Circuit Judge</u>, dissenting

I believe that the issues addressed at some length by the Court have not been properly preserved for appellate consideration. With respect to the merits, I have serious doubts as to the validity of the approach actually adopted by the majority. I therefore must respectfully dissent.

It is well established that this Court generally refuses to consider an argument or issue that a party has failed to raise in the District Court. <u>See, e.g.</u>, <u>C.H. v. Cape Henlopen Sch. Dist.</u>, — F.3d —, 2010 WL 2038871, at *11 (3d Cir. May 25, 2010) (finding that due process claim was never asserted in district court and refusing to address merits of constitutional argument raised for first time on appeal); <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 261-62 (3d Cir. 2009) (stating that, in absence of exceptional circumstances, we will not consider issues raised for first time on appeal and explaining that party must present argument at appropriate time and with sufficient specificity); <u>In re Surrick</u>, 338 F.3d 224, 237 (3d Cir. 2003) ("We need not address the merits of Surrick's third and final argument – that the state court's ruling violates his First Amendment rights and therefore constitutes a grave injustice pursuant to RAC II(D) – as he failed to adequately raise it before the District Court." (citing <u>Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1298 (3d Cir. 1991))). Similarly, we usually refrain from addressing an argument or issue not properly raised and discussed in the appellate briefing. <u>See, e.g.</u>, <u>Surrick</u>, 338 F.3d at 237 ("Further, to the extent that Surrick's reply brief may be read to challenge the District Court's finding of waiver with respect to the First Amendment argument that was asserted below, we conclude that his failure to identify or argue this issue in his opening brief constitutes waiver of this argument on appeal." (citing <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 182 (3d Cir. 1993))).

Both before the District Court and now on appeal, Forrestal has failed to raise the various issues resolved by the majority. Specifically, it has failed to raise the issue of whether, in cases where one party's country of incorporation has made an Article 96 declaration under the CISG while the country of the

other party to the alleged contract has not done so, a court must initially decide, based on the forum's choice-of-law rules, which country's law applies and then apply the substantive law of the applicable jurisdiction. Likewise, the parties have not briefed the specific question of whether New Jersey or Argentine law applies here. The majority itself acknowledges that the District Court did not conduct a choice-of-law analysis and did not explicitly consider any form requirements, or any exceptions to those requirements, recognized under either New Jersey or Argentine law. In a letter dated May 7, 2010, this Court even went so far as to direct Forrestal's counsel to respond to the following two questions:

> 1. Is it your contention that a choice of law analysis must be conducted under New Jersey law (as the law of the forum state) in order to decide whether the contract laws of Argentina or the contract laws of New Jersey govern here? If so, please explain in detail why such an analysis was required? And please explain where you raised and preserved this contention below?

> 2. Is it your contention that the contract law of Argentina would provide you with a legal claim even in the absence of a written contract? If so, why? Also please explain where you raised and preserved this contention below?

Through its counsel, Forrestal eventually submitted a document that I believe is, at best, non-responsive to our letter and ultimately unhelpful.

I believe that it would be inappropriate for this Court to consider these CISG and choice-of-law issues at this juncture. In fact, the complexity and outright novelty of the CISG issue clearly weigh in favor of following our usual approach to non-preserved arguments and issues. The majority itself notes that it has uncovered almost no case law indicating how we should address the situation in which one state has made an Article 96 declaration under the CISG (i.e., Argentina) and the other state

2

has not made an equivalent declaration (i.e., the United States). In turn, it further observes that courts in other countries as well as various commentators are divided over how to proceed in such circumstances and that even the supporters of the position ultimately adopted in the majority opinion have not explained their own reasoning in any real detail. We should be especially reluctant to address a totally novel yet important issue of international law where we do not have the benefit of full and proper briefing by the parties.

Finally, considering arguendo the merits of these issues (which the Court *should not*), I would still have considerable difficulty agreeing with the majority's holding that a choice-of-law analysis is required here because such an approach appears to be at odds with the CISG itself. I acknowledge that the majority has clearly given this novel question a great deal of attention and has thoroughly, fairly, and competently explained its own reasoning. However, it still appears that, given the plain language of this international treaty, its structure, and its purposes, a written contract is required where, as here, one of the relevant countries has exercised its right to make an Article 96 declaration. In turn, because Forrestal has clearly failed to produce the requisite written agreement, its contractual claim must accordingly fail as a matter of law. Nevertheless, I reiterate that we should not reach the merits of this complicated issue at this time.