NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2385
_____

SHAWN WILLIAMS,
Appellant

v.

ROBIN NYBERG; WAGNER; HARMON; PAUL A. ENNIS, Deputy Superintendent;
LAURA GILES, CEVC; ROSCINSKI, CEVC; ERIC EGAN; MICHAEL C. CLARK,
Superintendent; BRIAN FLINCHBAUGH, Deputy Superintendent; MICHELLE
THARP, CSA; LT. T. ANDERSON; PRINCIPAL CINDY CLARK; RALPH A.
DECECCO, FCPD; SARA EDDY, PSS; LT. SKINNER; CAPT. D. HEIBNER; CAPT.
SISSEM; CAPT. IRWIN; UNIT MANAGER KURT SEUSSER; VALERIE KUSIAK,
CCPM; LIEUTENANT J. W. FAIT; MAJOR PATRICIA THOMPSON; MAJOR
CHRISTOPHER M. MEURE; ERIN BROWN, OPM Director; LT. S. BARNER;
ASHLEY WEBER, OPM Transportation Coordinator; J. S. JOHNSON; JOHN E.
WETZEL, Secretary; TREVOR A. WINGARD, Regional Secretary; JAMES C.
BARNACLE, OSCII Director; TABB BICKELL, Regional Secretary; RICH
KUSTENBAUDER; CRAIG MCEWEN, OPM Transportation Lieutenant; BARRY
SMITH
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1:20-cv-00208)
District Judge: Honorable Susan Paradise Baxter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2024
Before: SHWARTZ, RESTREPO, and FREEMAN, Circuit Judges

(Opinion filed: February 12, 2026)
_____

OPINION[*]

_____

PER CURIAM

Shawn Williams, a Pennsylvania inmate, appeals the District Court's adverse judgment in this prison-civil-rights case. For the reasons discussed below, we will affirm the District Court's judgment in part, vacate in part, and remand for further proceedings.

I.

In July 2020, Shawn Williams initiated a pro se civil rights action against prison officials at SCI-Albion. Williams's amended complaint alleged multiple violations of his First, Eighth, and Fourteenth Amendment rights, as well as claims of conspiracy and failure to prevent conspiracy, by some 34 employees of the Pennsylvania Department of Corrections. On appeal, he focuses on three retaliation claims, so we will do the same.[1] According to Williams, his Grievance 749448, initially filed in July 2018 against named defendant and prison librarian Robin Nyberg, prompted prison guards and employees to begin a conspiracy to retaliate against him. This retaliation took numerous forms; key to this appeal are his allegations that staff refused to notarize a document for him and remove him from his job as chapel janitor. Williams also alleged that Nyberg retaliated

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We do not address any issues that Williams did not raise in his opening brief. See, e.g., M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020).

against him by telling other inmates that Williams was a "snitch," for reporting that she had played loud music in the library, which resulted in both Nyberg's and her prison inmate workers' being prevented from playing music (the latter through their GTL tablets). He asserted that this statement was made in retaliation for his protected use of the prison grievance system against Nyberg, and points to the several grievances he had recently filed as evidence of a pattern of antagonism.

After dismissing various claims that are not relevant to this appeal, the District Court adopted the Magistrate Judge's report and recommendation, which recommended that summary judgment be granted on all remaining First Amendment claims. Williams appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291, and exercise plenary review over the District Court's grant of summary judgment. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022). Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To withstand a motion for summary judgment, "a plaintiff . . . must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III.

On appeal, Williams claims that the District Court erred in granting summary judgment to the defendants on his claims that the defendants retaliated against him by refusing to notarize a document, suspending him from his prison job, and telling other prisoners that he was a "snitch" who caused them to lose privileges. We will affirm the District Court's judgment as to the first two claims, but because we conclude that the District Court did not consider the full scope of Williams's third claim, we will vacate its judgment as to that claim and remand for further proceedings.

To establish First Amendment retaliation, an incarcerated plaintiff must present evidence that (1) he engaged in constitutionally protected conduct, (2) prison officials caused him to suffer an adverse action, and (3) the constitutionally protected conduct was a substantial or motivating factor in the decision to take that adverse action. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). An adverse action is conduct "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). However, if prison officials can demonstrate that the same adverse decision would have been taken regardless of the protected conduct because of a valid, non-pretextual penological interest, the retaliation claim is defeated for want of causation. See id.; Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002).

Contrary to Williams's first two arguments, the District Court's grant of summary judgment on the claims relating to Nyberg's notarization services and Williams's

4

dismissal from the chapel janitorial staff was proper. Williams had requested that Nyberg notarize the affidavit of a fellow inmate, which had been completed pursuant to 28 U.S.C. § 1746. In response to Williams's request for services, Nyberg replied in writing that Williams did not need a notary for a declaration under 28 U.S.C. § 1746, and that the document could be submitted as is. Additionally, the Court noted that Williams's affidavit was successfully submitted. As a result, the record at summary judgment established that Williams did not suffer any adverse action from Nyberg's denial of notarization services.

The District Court also properly granted summary judgment to defendant Paul Ennis regarding Williams's removal from his chapel janitorial duties. While removal from prison employment is sufficiently adverse to support a retaliation claim, see Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017), the prison's decision to remove him is amply explained by the same decision defense, see Carter, 292 F.3d at 154. Defendants have submitted evidence establishing that Williams was removed from his janitorial position due to fears that Williams presented a threat to Nyberg. Given the evidence indicating that Williams presented a credible danger to Nyberg's safety, which Williams has not meaningfully rebutted, the same decision defense applies, and Williams's claim fails for want of causation. See Rauser, 241 F.3d at 333; see also Carter, 292 F.3d at 154.

However, we will vacate the District Court's judgment concerning Williams's claim that librarian Robin Nyberg told other inmates that he was a "snitch" whose

grievances were "responsible for the library workers not being allowed to bring their GTL Tablets to work" anymore. As evidence, he has proffered a declaration from a fellow inmate and library employee, who swore under penalty of perjury pursuant to 28 U.S.C. § 1746, that he had witnessed Librarian Nyberg make these statements to inmates. Williams has asserted that this utterance constituted unconstitutional retaliation in response to his exercise of a First Amendment right.

The District Court correctly concluded that Williams produced evidence that he was engaged in a protected activity, as he was a "prolific filer of grievances" within the prison system. Whether written or oral, the submission of such grievances is a protected activity under the First Amendment.[2] Mack v. Warden Loretto FCI, 839 F.3d 286, 298-99 (3d Cir. 2016).

Nevertheless, the Court ultimately granted Nyberg summary judgment on this issue, concluding that Nyberg's statements were insufficiently adverse to satisfy the second prong. The District Court distinguished between accusations of snitching on inmates (which it recognized could "invite ostracism, harassment, or even violence against the subject inmate") and accusations of snitching on prison officials, which does not present those risks. However, the District Court's analysis did not seem to appreciate

---

[2] Appellees argue that Williams's threatening language towards Nyberg obviates any protections under the First Amendment. The District Court did not address this issue. We will leave it to that Court to address, in the first instance, whether a threat that was omitted from the re-filed grievance, eliminated all of Williams's grievances from the protections of the First Amendment.

that, under Williams's version of the facts,[3] Nyberg had also told other inmates that Williams's snitching had caused them to lose privileges. Specifically, the Abbey declaration states that Nyberg said Williams's snitching was responsible for "library workers not being able to bring their GTL Tablets to work." Abbey Decl., ECF No. 124-1 at 7.[4] Given that whether an action qualifies as "adverse" under this standard is "ultimately a question of fact," Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012) (quotation marks omitted), that "will depend on the facts of the particular case," Allah, 229 F.3d at 225, we will vacate and remand to permit the District Court to consider in the first instance this additional aspect of Williams's claim.[5]

The District Court also determined that, because Williams did not provide the grievance in which he complained about the music in the library, it was "impossible to determine whether the conduct was sufficiently proximate to support a finding of causation." We will vacate this part of the District Court's order as well. If Williams's

---

[3] While Nyberg has denied making these statements, see Decl., ECF No. 119-12 at 2, at summary judgment, we accept Williams's version of the facts, see, e.g., Rivas v. City of Passaic, 365 F.3d 181, 199 (3d Cir. 2004).

[4] This interpretation is further buttressed by the fact that Abbey's declaration identifies himself as a library employee and asserts that Nyberg was his supervisor.

[5] On appeal, Nyberg argues that she is protected by qualified immunity. However, she did not raise this defense in her summary judgment motion, and the District Court did not consider the doctrine in its ruling. "We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance," Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d 395, 401 (3d Cir. 2010), and we will take that approach here. Cf. HIRA Educ. Servs. N. Am. v. Augustine, 991 F.3d 180, 192 n.8 (3d Cir. 2021).

relevant protected conduct was a grievance or oral complaint about the music, see Mack, 839 F.3d at 298-99, there was evidence of causation in Nyberg's statements—i.e., her snitching accusations were based on his complaint. See generally Watson, 834 F.3d at 424. Meanwhile, if the protected conduct was Williams's prior grievances—which he filed on August 2, 2018, and September 12, 2018—it is not necessary to know the date of his complaint about the music to assess the temporal connection between those events and Nyberg's alleged adverse action, which occurred, at the latest, on October 19, 2018. We will therefore vacate and remand for the District Court to consider causation in light of the temporal proximity, see generally Qin v. Vertex, Inc., 100 F.4th 458, 477 (3d Cir. 2024) (concluding that in the Title VII retaliation context, a "three-month range [is] unusually suggestive of retaliatory motive" (quotation marks omitted)), as well as Williams's alleged pattern of antagonism between him and Nyberg, see Watson, 834 F.3d at 422; see also Abbey Decl., ECF No. 124-1 at 9 ("Nyberg repeatedly tried to solicit me into helping her get [appellant] into trouble and fired from his Chap[el] Janitor job, by requesting that I lie to SCI Albion Security staff, by claiming that [appellant] obsessively harassed and stalked her."); Williams Decl. ECF No. 121 a 1–3 (alleging that Nyberg took various actions against him).

Accordingly, we will affirm the District Court's judgment in all respects except for its grant of summary judgment to Nyberg on Williams's claim that she retaliated against him by telling other inmates that his "snitching" had caused them to lose

privileges; as to that claim only, we will vacate the District Court's judgment and remand for further proceedings.